Blume *v.* State.

---

---

## BLUME *v.* THE STATE.

[No. 19,027.    Filed March 14, 1900.]

CRIMINAL LAW.—*Indictment.*—*Indorsement.*— It is immaterial on what part of an indictment the indorsement and grand jury foreman's signature appears. *pp. 345, 346.*

SAME.—*Defense of Insanity.*—*Question of Fact.*—The fact of sanity, when properly put in issue in the trial of a criminal cause, like any other material fact in the case, is considered by the jury, and found by the verdict, and such result, when fairly arrived at, will not be disturbed on appeal. *p. 346.*

SAME.—*Murder.*—*Evidence.*—*Sufficiency.*—In a trial under an indictment for murder in the first degree the evidence showed that defendant, a young man of dissolute habits, had become attached to an inmate of a house of prostitution. A loathsome disease rendered defendant a cripple, and the refusal of the woman to cohabit with him while in this condition excited his resentment and jealousy; and armed with a revolver, he went to the brothel where she resided, and after a short and apparently friendly interview, he shot and killed her, and then fired two balls into his own body. While the woman lay dying he asked if she was dead, and said "I have fixed her." A short time before the homicide, in a conversation with a friend, he declared that he would "fix her." *Held*, that the evidence was sufficient to warrant a conviction for murder in the first degree. *pp. 346, 347.*

SAME.—*Defense of Insanity.*—*Opinion Evidence.*—The testimony of a witness upon the issue of the sanity of the defendant in the trial of a criminal action was properly admitted in evidence, where the witness gave the facts and circumstances upon which his opinion was founded, as the weight to be given the testimony was a question for the jury, and depended upon the facts narrated as the basis of the opinion. *p. 347.*

SAME.—*Murder.*—*Defense of Insanity.*—*Evidence.*—*Letters Written by Defendant.*—*Expert Testimony.*—Where in a prosecution for murder the sanity of defendant was in issue, letters written by defendant to the deceased shortly before the homicide were properly

Blume *v.* State.

admitted in evidence for the purpose of obtaining the opinion of an expert witness upon the question of the sanity of defendant. *pp. 348, 349.*

CRIMINAL LAW. — *Instructions.* — *Defense of Insanity.* — *Harmless Error.*—An instruction in a prosecution for murder that a man with ordinary will power, which is unimpaired by disease, is required by law to govern and control his passions, and if he yields to wicked passions, and purposely and maliciously slays another, he cannot escape the penalty on the ground of mental incapacity was harmless even though the evidence showed that defendant was of unsound mind. *pp. 349, 350.*

SAME.—*Instructions.—Defense of Insanity.—Reasonable Doubt.*—An instruction on the question of sanity in a prosecution for murder that where insanity has once been shown to exist, it will be presumed to have continued until the contrary has been shown by the evidence is not bad for failure of the court to add the words "beyond a reasonable doubt" where the jury were repeatedly told in other instructions that they could not convict defendant unless his guilt was established beyond a reasonable doubt. *pp. 350, 351.*

SAME.—*Instructions.—Defense of Insanity.*—Where in a prosecution for murder the question of the sanity of defendant was in issue, defendant was not entitled to an instruction as to the presumption that insanity once shown to exist is presumed to continue, in the absence of proof that defendant at any time had been insane, and he could not be injured by an instruction, even if imperfect or incomplete, applicable only to a state of facts which was not shown by the proof. *pp. 351, 352.*

SAME.—*Instructions.—Murder.—Absence of Motive as Evidence of Insanity.*—Where in a prosecution for murder the evidence showed that the relations between defendant and deceased were immoral and illicit and her character and mode of life kept him unhappy and jealous, and the repugnance for him manifested by the woman in the latter part of their acquaintance, on account of his diseased condition, inflamed his resentment against her, an instruction that absence of motive might be considered as a circumstance indicating insanity was properly refused. *pp. 352, 353.*

APPEAL AND ERROR.—*Denial of Request Made by Attorney During Adjournment of Court.*—The denial of a request made by the attorneys for defendant, during the adjournment of court, and in the absence of the attorneys for the State, to send the jury out of hearing while they submitted a motion founded upon the alleged misconduct of one of the attorneys for the State during the argument, constitutes no part of the proceedings in the cause and is not subject to review on appeal. *pp. 353, 354.*

MISCONDUCT OF COUNSEL.—*New Trial.*—Defendant was not entitled to a new trial on account of the misconduct of the prosecuting

attorney in referring in his argument to the failure of the defendant to testify, where the court sustained defendant's objection to the statement, and instructed the jury that the remark was improper, and that the failure of defendant to testify should not be considered by them, and the defendant proceeded with the trial without any motion to set aside the submission and discharge the jury. *pp. 354-357.*

From the Boone Circuit Court. *Affirmed.*

*Sherman Mott, J. F. McCray* and *S. M. Ralston*, for appellant.

*F. C. Groninger, A. J. Shelby, W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley* and *J. B. Shelby,* for State.

Dowling, J.—Indictment for murder in the first degree. On application of appellant, the venue was changed, and the cause was sent to Boone county. Plea of not guilty, together with a special plea of insanity. Trial, and verdict of guilty of murder in the first degree, and that defendant be imprisoned in the State prison during life. Judgment on verdict. Motions to quash the indictment, and for a new trial, were made and overruled. The decisions on these motions are assigned for error.

(1) It is first objected that the indictment was not properly indorsed, but we are unable to discover the supposed defect. The record entry, immediately following the indictment gives the title of the cause, and the name of the crime charged. The words, "A true bill, Albert Sahm, Foreman," next appear below the title and the name of the offense, and opposite these is written, "Endorsement of Indictment." The requirement of the statute concerning the indorsement seems to have been strictly complied with. The ground of the objection is that it does not appear that the words, "A true bill, Albert Sahm, Foreman," were written upon the back of the indictment. With this view, we are unable to agree. But, even if these words were written elsewhere than on the back of the bill, the indictment would

probably be good. There is excellent authority for the proposition that it is immaterial on what part of the bill the foreman's signature appears. 1 Bishop's Crim. Proc. (3rd ed.), §698; *State* v. *Bowman*, 103 Ind. 69.

(2) Counsel for appellant contend, in the second place, that the verdict, at least upon the issue as to the insanity of the defendant at the time of the homicide, is not sustained by sufficient evidence. It cannot be asserted that there was no evidence of appellant's entire sanity when the offense was committed. On the contrary, the testimony on that subject was so strong and conclusive that the jury were fully authorized to accept and act upon it. But whether the proof on this branch of the case was evident and convincing, or otherwise, the jury were the exclusive judges of its weight and credibility, and the court cannot interfere with the conclusion reached by them.. The fact of sanity, when properly put in issue, like every other material fact in the case, is considered by the jury, and found by the verdict, and by the result, when fairly arrived at, we are bound.

(3) It is next urged that the verdict is contrary to law, in that the evidence, at most, will sustain a conviction for manslaughter only. The facts, in brief, were as follows: The appellant, a young man of dissolute habits, became attached to Grace Harvey, an inmate of a house of prostitution in the city of Indianapolis. A loathsome disease rendered the appellant a cripple, and the refusal of the woman to cohabit with him while in this condition excited his resentment and jealousy. A short time before the homicide, in a conversation with a friend, he declared that he would "fix her". Armed with a thirty-two caliber revolver, he went to the brothel where she resided, and, after a short and seemingly friendly interview, at the foot of the stairway, down which she had accompanied him, he shot and killed her, and then fired two balls into his own body. While the woman lay dying, he asked if she was dead, and said, "I have fixed her". The assassination of the unhappy woman

was cruel, malicious, unprovoked, and premeditated. Not one mitigating circumstance appears in the case. There is nothing in the proof to reduce the offense of the appellant below murder in the first degree.

(4) The fourth point made is that the testimony of the witness, Davidson, was improvidently admitted on behalf of the State, on the issue of the sanity of the appellant. Counsel say that this person had not such opportunities for observing the appellant as were necessary to qualify him to give an opinion upon the subject of his mental condition. The weight to be given to the testimony of the witness was a question for the jury, and depended upon the facts related by the witness as the basis of his opinion. Davidson stated when and where he had seen the appellant, and what was said and done by him. He was present when appellant testified as a witness in a suit for damages prosecuted by him against the Western Union Telegraph Company, and took notes of his evidence. As this witness gave the facts and circumstances upon which his opinion was founded, we think the testimony was competent. *Goodwin* v. *State*, 96 Ind. 550, and cases cited; *Grubb* v. *State*, 117 Ind. 277; *Johnson* v. *Culver*, 116 Ind. 278.

(5) The next point made in the briefs for appellant is that the court erred in permitting one Perry Kennedy, a detective, to testify, on behalf of the State, in rebuttal, that he had once arrested Dr. William H. Kluge, a witness for appellant, and that he had seen Kluge's picture in the Rogue's Gallery, at Indianapolis. An examination of the record discloses that, when the witness testified that he had arrested Kluge, this statement was stricken out on motion of the appellant; and that the court sustained appellant's objection to the question whether the witness had seen Kluge's picture in the Rogue's Gallery. Having secured a ruling in his favor upon each of these points, the appellant had no 'reason to complain of the action of the court, and no question upon this evidence is presented by the record.

Blume v. State.

(6)   The sixth and seventh reasons assigned for a new trial are the rulings of the court upon objections to the admission in evidence of certain letters written by the appellant to the deceased.   The letters, some twelve in number, were introduced for the purpose of obtaining the opinion of an expert witness, Dr. Frank B. Wynn, upon the question as to the sanity of the appellant at the time of the homicide, and shortly before that occurrence.   The first of these letters is dated August 4, 1897, and the last, June 27, 1898, and they cover at least a portion of the period during which it was claimed that the appellant was of unsound mind.   The letters were read in evidence, over the objection of the appellant, and were submitted to the examination of the expert witness.   After such examination, and, upon the basis of the same, the witness was permitted to give his opinion as to the sanity of the writer.   We find no error in the action of the court.   Written communications, as well as oral conversations, may afford evidence of the soundness or unsoundness of the mind of the writer, and may constitute a sufficient basis for the opinion of a skilled physician or alienist upon that subject.   Indeed, evidence of this character is regarded as of especial value in many cases, and as furnishing important tests of insanity.   The following, from a standard work upon medical jurisprudence, is directly in point: "The value of letters or other writings, as tests of insanity, has been shown by abundant illustrations by Marce, in a monograph on this particular topic.   To these might be added a series of cases, English and American, in which the insanity of testators and obligors has been in a large degree determined by the characters of written documents emanating from them.   Nor is such evidence without its worth in criminal prosecutions, especially where the question is whether insanity is genuine or simulated.   It is not merely the contents of writings that contribute to the decision of the question.   The style and handwriting often supply important tests.   'What experienced forensic physician,' asks

Liman, 'is not familiar with the writings of certain classes of lunatics, namely, the so-called querulants, writings teeming with flourishes—words and sentences italicizied singly, doubly, or trebly—with parentheses, interlineations, notes of quotation—writings often very voluminous, swollen with citations of alleged laws?' In other cases of lunacy are noticed peculiar modes of construction, words and expressions both original and incomprehensible, such as are familiar to every psychological physician. The first stages of paralysis are characterized by flightiness of writing, omission of words and sentences, blots, etc." 1 Wharton & Stille's Med. Juris., §387.

The witness, who showed himself thoroughly competent, described in a very intelligent manner the characteristics of the written compositions of the insane. He called attention to the absence of these peculiarities in the letters written by the appellant. Upon the basis of the coherency and consistency of these letters, the omission of everything fantastic or absurd, their apparent adherence to the facts of the situation of the writer, the quality and regularity of the handwriting, and other features pointed out by the witness, he expressed the opinion that, at the time they were written, the appellant was of sound mind. That this evidence was competent, we entertain no doubt. The foundation on which the opinion rested was fully made known to the jury, and they had the means of estimating its weight and value.

The objection that there were other letters in the possession of the State, written by appellant, and that all should be read, or none, was not deserving of serious consideration. The State had the right to introduce such of the letters as it deemed necessary, and to withhold all others in its possession.

(7) The giving of instructions numbered twenty-two and twenty-four, and the refusal of the court to give instructions numbered twenty, thirty-six, thirty-eight and thirty-nine are next complained of.

Instruction number twenty-two was in these words: "A

man with ordinary will power, which is unimpaired by disease, is required by law to govern and control his passions. If he yields to wicked passions, and purposely and maliciously slays another, he cannot escape the penalty prescribed by law upon the ground of mental incapacity. That state of mind caused by wicked and ungovernable passions, resulting not from mental lesion, but solely from evil passions, constitutes that mental condition which the law abhors, and to which the term *malice* is applied."

The objection taken to the foregoing instruction is that "the evidence in this cause clearly showed appellant to have been a man of unsound mind, and under that condition there could not be a conscious violation of law." If "the evidence clearly showed that the appellant was a person of unsound mind," then the instruction could do him no harm. It was expressly confined to "a man of ordinary will power, unimpaired by disease.". The attempted definition of malice was neither clear nor accurate, but the obscurity of the language used by the court was not calculated to injure the appellant.

By the twenty-fourth instruction, the jury were told that "a reasonable doubt as to the sanity of the defendant may arise upon the evidence of the State, whether the defendant introduce any evidence on the subject or not, and wherever insanity has once been shown to exist, it will be presumed to have continued until the contrary has been shown by the evidence." The correctness of this instruction is questioned because it failed to state that, where insanity has once been shown to exist, it will be presumed to have continued until the contrary has been shown by the evidence *beyond a reasonable doubt.*

The jury were repeatedly told in other general instructions given by the court that they could not convict the defendant unless his guilt was established beyond a reasonable doubt. They were further instructed that if, after duly considering all the evidence in the cause, there existed in the minds of the jury a reasonable doubt of the sanity of the

accused at the time of the commission of the crime alleged, they should acquit him. In view of the full and careful instructions upon the issue of insanity, and the proof concerning the same, we cannot believe that the failure of the court to repeat the words, "beyond a reasonable doubt", in the twenty-fourth instruction, operated to the prejudice of the appellant. *Hauk* v. *State*, 148 Ind. 238; *Goodwin* v. *State*, 96 Ind. 550. But upon another ground the instruction, even if it had been erroneous, was harmless. There was no proof in the case that the appellant at any time had been insane. Consequently, he was not entitled to an instruction as to the presumption that insanity, once shown to exist, is presumed to continue, and he could not be injured by an instruction, even if imperfect or incomplete, applicable only to a state of facts which was not established by the proof.

It is also contended that the court should have given instructions numbered twenty, thirty-six, thirty-eight and thirty-nine, as requested by appellant. The substance of instructions numbered twenty and thirty-six was contained in other instructions given by the court. Instruction number thirty-eight was an unnecessary refinement upon the direction, repeated again and again in the charge, that, before the jury could convict, they must be satisfied of the guilt of the defendant beyond a reasonable doubt, and that, unless every material fact alleged in the indictment and necessary to constitute his guilt of the crime charged was established beyond a reasonable doubt, they must acquit him.

The court refused to give the thirty-ninth instruction asked for by appellant, which was as follows: "It is a rule, universally observed, that men in the business, social, and ordinary affairs of life, as well as in the commission of crime, act from motive. It is proper, therefore, for you, as bearing upon the soundness or unsoundness of defendant's mind at the time of the commission of the alleged crime, to consider what reason, if any, the defendant had for committing the crime charged against him in this cause. This is true for

the reason that if, after you have examined and weighed all the evidence in the cause, you believe that the defendant had no motive for the commission of the alleged crime, and in that event it is for you to say whether the absence of a motive to commit the crime is not a persuasive circumstance in favor of the defendant's plea of unsoundness of mind."

The instruction tendered was objectionable upon many grounds, and the court properly refused to give it. Whether men in the commission of crime universally act from motive was a question the court had no right to determine as a matter of law. That men always act from motive in the commission of crime is not universally admitted.

It is observed by Blackford, J., in *Sumner* v. *State*, 5 Blackf. 579, 36 Am. Dec. 561, that "It is easy to conceive that the evidence in the case now before us might not be sufficient to produce on the minds of the jury an absolute certainty of the defendant's guilt, nor to prove that he had any motive to commit the crime charged, and yet it might be strong enough to satisfy the jury beyond a reasonable doubt that he was guilty." It is said that there may be crimes without motive. Wharton & Stille's Med. Juris. §405; Wharton Crim. Ev., §784. It is certainly true that in numerous cases the motive for the crime is not apparent. But the instruction, as tendered, was self-contradictory and meaningless. It asserted, without qualification or exception, that all men, sane and insane, acted from motive; and that if the jury found that the defendant had no motive for the commission of the alleged crime, they might consider such absence of motive as a persuasive circumstance in support of his plea of insanity. A court cannot be required to adopt as its own, and become responsible for, inconsistent and unintelligible statements of the law. Besides, the instruction was not pertinent to the facts proved, and for that reason the appellant was not entitled to it.

The evidence left no room for doubt as to existence and precise nature of the motives by which the appellant was

actuated.   Not a circumstance in the proof gave color to the theory that the homicide was the result of a delusion, or an insane impulse.   The situation was utterly unlike that of a kind husband, of moral habits, living in proper relations of mutual confidence and affection with a pure and virtuous wife, who suddenly slays her without apparent cause, and then makes a desperate attempt upon his own life.   On the contrary, the relations between the appellant and his paramour and victim were immoral and illicit.   Her character and mode of life kept him unhappy and jealous.   His own diseased condition soured and embittered him, and the repugnance for him manifested by the woman in the latter part of their acquaintance inflamed his resentment against her.   When he found that he could no longer enjoy the favor of his mistress, he determined to destroy her life, and to put an end to his own.   In executing this purpose, he exhibited a reckless disregard of consequences by no means uncommon in persons in his situation.   His evil habits, vile associations, and depraved course of conduct tended directly toward a catastrophe of crime.   The motives for that crime, apparent in every feature of the case, were jealousy, disappointment, and mortification.   In this state of the evidence, an instruction that absence of motive might be considered as a circumstance indicating insanity was wholly out of place, and could have had no other effect than to bewilder the minds of the jury.   Where there is any evidence of the existence of a material fact, a party is not entitled to an instruction as to the effect of a total failure of proof of such fact.

After an adjournment of the court at noon, and while it was not in session, in the absence of the counsel for the State, the attorneys for appellant privately asked the judge of the court to send the jury out of hearing while they submitted a motion founded upon the alleged misconduct of one of the attorneys for the State during the argument. This, the judge, in the same private conversation, said he would not do.   The denial of the request so made is one of the rea-

sons assigned for a new trial, and it is now urged as a ground of reversal of the judgment. This action, on the part of counsel for appellant, was unprecedented, and a matter privately discussed and determined during an adjournment of the court constitutes no part of the proceedings in the cause, and is not subject to review by this court.

The last point made for appellant is that a new trial should have been granted on account of the misconduct of one of the attorneys for the State in referring in the closing argument to the failure of the defendant to testify. It is extremely doubtful whether this question is properly presented by the record. The objection is stated in the motion for a new trial as misconduct of the prosecutor, and as error of law occurring at the trial. But misconduct of the prevailing party is not a ground for a new trial in a criminal cause; and error of law occurring at the trial can hardly be said to have taken place, where an objection was sustained and a decision made in favor of the appellant. The objectionable words were the following: "The defendant in this cause has not gone upon the stand to testify because * * *." The appellant by his counsel objected to the statement at the time it was made, and his objection was sustained. The judge stopped the attorney for the State, and immediately instructed the jury in these words: "It is wholly improper for any remark to be made concerning the defendant's failure to testify, and it is wholly improper, gentlemen, for you to consider that fact when you retire to your jury room. It is wholly improper for you to refer to the fact in the jury room that he did not testify. He has the right, under the law, not to testify, and he has availed himself of that right, and the jury cannot draw any inference from it, and consider it in any respect against him, and you cannot refer to it in your jury room." To this instruction, the appellant excepted. Nothing more was done by appellant concerning the supposed misconduct of the prosecutor while the court remained in session, except that it was assigned as one of the

reasons for a new trial.   Counsel for appellant now insist with great force and earnestness that for this violation of the rule of the statute the judgment should be reversed.   The section of the statute prohibiting any reference to the failure of the defendant to testify in a criminal case is as follows: "The following persons are competent as witnesses:  *   *   * *Fourth.*   The defendant to testify in his own behalf.   But if the defendant do not testify, his failure to do so shall not be commented upon, or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same; and it shall be the duty of the court to instruct the jury as to their duty under the provisions of this section."   §1867 Burns 1894. In some of the earlier cases, decided soon after the enactment of the provisions above set out, it was held that any reference in the argument by counsel for the State to the fact of the failure of the defendant to testify was cause for a new trial. *Long* v. *State,* 56 Ind. 182, 26 Am. Rep. 19; *Showalter* v. *State,* 84 Ind. 562.   Other decisions indicate a disposition on the part of this court to adopt a less stringent rule, and to determine questions arising under this section of the statute more nearly in accordance with the principles by which it is guided in analogous cases under the criminal code.   In *Coleman* v. *State,* 111 Ind. 563, the court held that in the absence of a motion by the defendant to set aside the submission, and discharge the jury, there was no available error in refusing the motion on account of the alleged misconduct of the prosecuting attorney in his opening statement.   And, in *Robb* v. *State,* 144 Ind. 569, this language was used: "In the present case it was the privilege of the appellant to have invited and insisted upon some action of the trial court, with reference to the alleged misconduct, and to have based his exception upon the court's ruling.   Without doing so he occupies the position of the complaining party in the case from which we have first quoted, namely, of taking an exception to the conduct of the attorney and not to any ruling of the court."

In the case before us, the objection of the appellant to the offensive remark of the attorney for the State was sustained as soon as made, and the court instantly charged the jury, in clear terms, as to the impropriety of the remark, and their duty to discharge from their minds all consideration of the fact that the defendant had failed to testify. Having had this ruling in his favor, the appellant, without further objection, and without any motion to set aside the submission and discharge the jury, proceeded with the trial. As he adopted this course, and took his chances for an acquittal, he must be held to have waived the right, even if such right existed, to withdraw the case from the jury. But we are inclined to think that misconduct of the character alleged on the part of the attorney for the State does not in every instance constitute such incurable error as, *ipso facto*, entitles a defendant to a new trial, even where the question is properly reserved and presented. It must be presumed that the jury are men of sense, and that they will obey the admonition of the court when told that they must not permit the reference to the failure of the defendant to testify, to influence their minds. In most other instances, when the objection to incompetent testimony, the use of improper language, or other misconduct on the part of counsel, is sustained, and the jury are promptly and sufficiently advised upon the question so presented, it is held that the party injured has obtained all the relief which he can justly claim. While a violation of the statute forbidding comment upon, or reference to the failure of a defendant in a criminal cause to testify, is inexcusable on the part of the offending attorney, and deserving of the severest censure of the court, we do not think that it should, in all cases, have the extreme effect of arresting the cause, and compelling the court to grant a new trial, where reasonable and prompt measures are taken by the court to prevent any injurious effect from such unprofessional and indefensible conduct. *Pigg* v. *State*, 145 Ind. 560; *Lewis* v. *State*, 137 Ind. 344; *Livingston* v. *State*, 141

Ind. 131; *Lingquist* v. *State*, 153 Ind. 542, and cases cited. Gross violations of the rule, or a refusal or failure on the part of the offending counsel to heed the admonition of the court when told to refrain from such comment or reference, would, doubtless, justify the court in sustaining a motion to set aside the submission, and order a new trial. We hold, therefore, that the proceedings of the court upon the objection to the improper language used by the attorney for the State were correct, and that the appellant was not entitled to a new trial on account of such misconduct.

Upon a careful and thorough examination of all the evidence in this case, we are convinced that the appellant was properly convicted, and that there is no error in the record. Judgment affirmed.