## CONSUMERS PAPER COMPANY v. EYER.

[No. 19,996.   Filed April 10, 1903.]

APPEAL AND ERROR.—*Court Rules.—Briefs.— Waiver.*—Under rules twenty-one and twenty-two of the Supreme Court requiring an appellant to file his brief within sixty days after the submission of the cause and state therein the errors relied upon for reversal, points not stated therein are waived and cannot be presented in a brief subsequently filed purporting to contain a citation of additional authorities.  *p. 427.*

SAME.—*Constitutional Question.*—A constitutional question will not be decided, where the cause can properly be disposed of otherwise.  *p. 427.*

MASTER AND SERVANT.—*Employers' Liability Act.— Orders Given by President of Corporation.*—In an action by an engineer for personal injuries, the evidence showed that the president of defendant corporation, in the absence of the superintendent, had ordered the engineer to light the gas in the furnaces, and while he was complying with such order the president negligently opened a large valve which caused an explosion, injuring plaintiff.  *Held*, that the evidence authorized the finding that plaintiff was bound to conform to the orders of the president.  *pp. 427-431.*

SAME.—*Employers' Liability Act.—Negligence of President.*—Where an employe was injured while complying with an order given him by the president of the corporation by the negligent act of the president in turning a gas valve, the corporation is not relieved from liability by reason of the fact that it was not a part of the duty of the president to operate the valve or to assist in the operation of the machinery in the plant.  *pp. 429-431.*

SAME.—*Negligence.—Imputed Knowledge of Master.*—A complaint for personal injuries to an employe while lighting the gas under a boiler caused by the alleged negligence of the president, to whose orders the employe was conforming when injured, alleged that the president turned on the gas from a large main knowing the valve connecting the same with the furnace he had ordered plaintiff to light was open.   The jury found that the president was informed by another employe before he turned on the gas that the

valve was closed, and that he believed it was closed when he turned the gas on. *Held,* that such finding was not necessarily inconsistent with the charge of knowledge in the complaint; since if the president turned on the gas without the degree of information that an ordinary prudent man would have regarded as sufficient to warrant such action, the law imputes knowledge to him that the valve was open. *pp. 431, 432.*

PLEADING.—*Amendment to Conform to Proof.—Presumption.*—Where the variance between the allegations of the complaint and the proof is not a matter of substance, the complaint, by reason of the requirement of §670 Burns 1901, must be deemed to have been so amended as to make the allegations conform to the proof. *pp. 432, 433.*

TRIAL.—*Offer to Prove in Presence of Jury.—Misconduct of Counsel.*—No available error exists because of an offer to prove an incompetent matter, made in the presence of the jury, where the offer was refused and the jury admonished by the court not to consider it. *pp. 433, 434.*

SAME.—*Misconduct of Counsel.—Exception.—Appeal and Error.*—Where no objection was made to alleged misconduct of counsel in argument to the jury, it is too late to raise the question for the first time on appeal. *p. 434.*

APPEAL AND ERROR.—*Harmless Error.—Trial.—Misconduct of Counsel.*—Alleged misconduct of counsel in suggesting to the jury, in argument, that certain interrogatories should be answered by the words "No evidence," was harmless where affirmative answers to such interrogatories would not have created an irreconcilable conflict between the answers to interrogatories and the general verdict. *pp. 434, 435.*

From Delaware Circuit Court; *J. G. Leffler*, Judge.

Action by Harry J. Eyer against the Consumers Paper Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*James Bingham* and *Jesse Long*, for appellant.

*H. F. Wilkie, Henrietta Wilkie, D. W. Crockett* and *G. H. Koons,* for appellee.

GILLETT, J.—Appellee recovered judgment against appellant in the court below. The action was to recover damages for alleged negligence.

It is first urged by appellant's counsel that the second paragraph of complaint, on which the cause was tried, is insufficient. It appears from said paragraph that appellee

was an employe of appellant, a corporation, and that, while in the exercise of due care, he was injured by the negligence of one Rush Evans, the president of said corporation, while conforming to an order of said Evans as such president, which order, it is alleged, appellee was bound to conform to. Section 7083 Burns 1901, commonly known as the employers' liability act provides: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * (2) Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform." In speaking of this subdivision, in *Louisville, etc., R. Co.* v. *Wagner,* 153 Ind. 420, 423, this court said: "It provides that when an injury results from the negligence of any person in the service of a corporation, to whose orders the injured party at the time was bound to conform and did conform, the injured party being himself without fault, the corporation shall be liable. The statute places the case upon a principle different from that in support of the co-servant's rule and the assumption of risk. The test here is threefold: (1) Was the offending servant clothed by the employer with authority to give orders to the injured servant that the latter was bound to obey? (2) Did the injury result to the latter from the negligence of the former while conforming to an order of the former that the injured servant was, at the time, bound to obey? (3) Was the injured party at the time of injury in the exercise of due care and diligence? If these three things concur, appellee exhibits a good cause of action."

In its principal brief, appellant contends that the president of a manufacturing corporation has no authority to participate in the practical operation of its plant. We need

not at present decide this question, because the complaint makes a case within the literal terms of said subdivision.

In a brief subsequently filed by appellant, purporting to contain a citation of additional authorities, the point is made that, as applied to corporations other than railroad corporations, said act is unconstitutional. The point stands as waived under rules twenty-one and twenty-two of this court. The decision of a constitutional question is regarded by the court as profoundly important, and it is only where the point is duly presented, and the court can not otherwise properly dispose of a case, that it will decide such a question.

The next question in the order of argument is whether the court erred in overruling appellant's motion for judgment in its favor on the answers to the interrogatories that were submitted to the jury. We find that many of the points made by appellant on this branch of the case are reargued in discussing the sufficiency of the evidence. To the end that we may discuss the effect of answers to particular interrogatories in a manner that will be intelligible to persons not familiar with the record, and yet avoid the necessity of setting out all of said interrogatories and the respective answers thereto, we will first give an outline of the evidence: On December 29, 1899, appellant was engaged in the manufacture of strawboard in the city of Muncie. Appellee was at that time in the employ of appellant as an engineer, but it was his duty to do the work of the boiler tender when required. In appellant's mill was a battery of ten boilers, extending east and west, with furnaces under each of them. Natural gas was used as fuel in said furnaces. The gas was conveyed into said mill through an eight-inch main that terminated in the boiler room at a point in front of said battery—about the middle thereof. At this point there was connected with said main line a four-inch line that paralleled said battery, and connected with this line were individual three-inch lines, leading into said fur-

naces. Said eight-inch main was also connected, a few inches back of the end thereof, with a line of one-inch pipe that extended to a point immediately in front of said battery, and was there connected with a one-inch line that ran parallel with said line of boilers, having individual three-quarter-inch pipes leading into the furnaces. The gas could be shut out of the four-inch line by a valve in the eight-inch line, and the individual lines, extending into the furnaces, including both the three-inch and the three-quarter-inch lines, had valves whereby the flow of gas through them could be stopped. All of said lines were beneath the floor of the mill, and only the valve-stems, with the wheels upon them, were above the floor. The three-quarter-inch lines were used in lighting the gas, and before opening the large valve the valves in the three-inch pipes were required to be closed. When the large valve was opened, the gas under a boiler being ignited, the fire could be increased to the extent necessary by means of the valve in the three-inch line.

On the afternoon in question the gas began to fail, owing to a break in the main line at some distant and unknown point in the country, and the superintendent and a force of men started to discover and repair said break. It was, of course, not known when they would return. The gas was shut off from the seven south furnaces. The day was cold, and at half past four the gas had so far failed that the power was gone and only a small jet was burning in the boiler room. There was no fire in the adjacent office building of the mill. It was growing dark, and as the mill had its own electric lighting system, that was dependent upon such power, the electric lights would not burn. At this time, the president of appellant, one Rush Evans, came into the boiler room and inquired whether there was any other fuel. He was informed that there was none. He then asked whether there was any danger of freezing, and appellee answered that he thought that nothing would freeze before midnight. Evans expressed his vexation that others

should discover that the gas had failed, and cautioned the men to be very careful, as the gas might suddenly come on. It seems to have then occurred to him that gas might be obtained from an abandoned well in the vicinity, as he sent the boiler tender—one John Young—to make the experiment. There was soon a heavy pressure of gas in the main line, as indicated by said gas light blazing up, and Evans then said to appellee: "Harry, light up. Let's get the good of it." Appellee, who testified that he had observed Young close the large valve, proceeded to obey said order. He lighted the gas under the north furnace, closed the three-inch valve in front of said furnace, and was about to open the door of the next furnace, when Evans said: "I will give you the gas, Harry;" and, suiting the action to the words, he opened the eight-inch valve. Appellee, hearing the remark, exclaimed: "Hold on! Don't!" He attempted to escape, but before he could do so an explosion occurred from said gas, seriously injuring him.

The appellant is a foreign corporation, and on the day in question, there was no member of the board of directors (other than Evans) in the State. Evans had not before superintended the operation of the mill, in the sense of giving orders directly to the men, but, to use his expression while upon the stand, he "had a general oversight of the business, and kept the thing going." There are some further items of evidence that we will mention in connection with a discussion of the particular points that they relate to.

The question is presented upon the evidence as to whether the appellant was responsible for the injury to appellee, in view of the fact that it is not shown that Evans had been delegated the power to superintend the operation of the mill. There seems to be an absence of authority upon the question as to the power of the president of a manufacturing corporation directly to superintend the practical operation of the plant. All of the cases that we have been able

to find relative to the power of the president of a corporation relate to his power to contract. There is no doubt that his authority is much more circumscribed than is popularly supposed. *National State Bank* v. *Vigo County Nat. Bank,* 141 Ind. 352, 50 Am. St. 330. In this case, however, the question as to the president's authority to turn the large valve need not be decided. The question to be determined is whether the evidence authorized the finding that appellee was required to conform to the order of Evans, as president, to light the gas under the furnaces.

The duties of a president are ordinarily executive in their character, and, if the superintendent had been present, there is no doubt that the president, through the superintendent, might have ordered the fires started in the furnaces. Could the president, under the circumstances of this case, lawfully give the order directly to the employe? It is a fair implication from the nature of the employment that the president of a corporation, who is assigned the duty of exercising a general supervision over a business of the character in question, is empowered, in the absence of the board of directors, to give a clearly proper order to an employe in an emergency, the superintendent not being present. It is urged that there was no real emergency for the giving of the order. There was a situation that approximated an emergency, and it seems to have been a situation that caused anxiety upon the part of Evans. We think, if Evans is to be presumed to have had any authority to act in an emergency, that, under the circumstances, it was for him to judge of it, at least to the extent of giving an order that was of a routine character to the employe accustomed to perform such duty. With the plant shut down, and darkness approaching, and with the menace of injury to the property not many hours away if heat and power could not be obtained, and the superintendent absent for an indefinite time, it would be the height of unreason to infer that the president of the corporation could not directly speak the

word that if communicated through the ordinary channel would be required to be obeyed. There was no showing that the duty of superintendence was exclusively vested in the superintendent, and, as laid down by a leading writer on private corporations: "There seems to be no sound reason why the president of a corporation can not discharge the duties of many of the inferior ministerial officers of the company, if occasion requires it." Thompson, Corporations, §4653. The presumption is that the president has power to act as superintendent in an emergency, during the latter's absence, and this presumption is not rebutted by mere evidence that he had never before acted as superintendent. See *Jones* v. *Williams,* 131 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. 436; *National State Bank* v. *Vigo County Nat. Bank, supra.*

In answer to interrogatory number 101, the jury found that it was not a part of the duty of the president of appellant to operate said valve, or to assist in the operation or running of the machinery in the mill. This interrogatory evidently refers to whether it was the duty of the president to perform acts of manual labor. It was not required, to create a liability, that the president should have had authority to turn said valve. At the moment in question it was rather his duty to refrain from so doing. The pertinent question in this connection is whether he had authority to give the order to light the gas. *Louisville, etc., R. Co.* v. *Wagner,* 153 Ind. 420.

The jury found specially that Evans was informed by Young before he turned the large valve, that the valves in the three-inch lines were closed, and it is insisted that this fact exculpates Evans from the charge of negligence. It was pertinent to show that Evans had been so informed, as a fact bearing on the question of his negligence, but it was not conclusive. Bearing in mind the extraordinary hazard that the turning of the large valve would subject appellee to if the three-inch valves were not closed, it was a question

whether the man of ordinary prudence would have taken the chance of the statement being incorrect. It would have taken but a few moments longer to have tested each of the three-inch valves, to ascertain whether all were closed, and the jury very properly concluded, as evidenced by its general verdict, that, notwithstanding the statement of Young, the act of Evans in opening the large valve was negligent.

The finding of the jury that Evans believed that the three-inch valves were closed is not inconsistent, in legal effect, with the averment of the complaint that he well knew that the gas was shut off from the three north furnaces only by the valve or cut-off by which gas was shut off and prevented from entering the four-inch supply line. Having given the order, which appellee was obeying, it was the duty of Evans to refrain from doing an act that would place the appellee in a position of extraordinary hazard. *Louisville, etc., R. Co.* v. *Wagner, supra.* The charge of knowledge may be supported by proof of facts from which the law will impute knowledge, where there is an affirmative obligation to ascertain what the actual condition is; and if Evans opened the large valve without the degree of information concerning the condition of the three-inch valves that an ordinarily prudent man would have regarded as sufficient to warrant such action, the law imputes to him knowledge that the three-inch valves were open. *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156; *Louisville, etc., R. Co.* v. *Miller,* 140 Ind. 685; *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297; *Lake Erie, etc., R. Co.* v. *McHenry,* 10 Ind. App. 525.

The answers to interrogatories ninety-seven and ninety-eight at most suggest a variance between the averment and the proof. Whether the point of ignition was in front of furnace number ten, or whether the gas in furnace number nine was ignited by the flames from furnace number ten, were not matters of substance; and, if there was any variance in these particulars, the complaint must, by reason of

the requirement of our code, be deemed to have been so amended as to make the allegation conform to the proof. §670 Burns 1901; *Evansville, etc., R. Co.* v. *Maddux,* 134 Ind. 571; 1 Works' Prac. (3d ed.), §727, and cases there cited.

It is objected that instruction number sixteen, relative to the measure of damages, is not based on the hypothesis of the jury's finding for the plaintiff on the other issues. Standing alone, the instruction is open to the objection urged; but when read as following instruction number fifteen, that presumptively immediately preceded it, it appears that the jury could not have been mislead. These instructions relate to the same subject, and, when read in the order mentioned, they together constitute a substantially correct instruction. Instruction number five, tendered by appellant, did not contain a correct statement of the law as applied to the second subdivision of the employers' liability act. *Pittsburgh, etc., R. Co.* v. *Gipe, ante,* 360, and cases there cited.

The finding of the jury in answer to interrogatories numbered fifty-four and sixty-six renders it unnecessary to consider whether instruction number ten, tendered by appellant, should have been given. For the same reason no available error exists because of the refusal of appellant's instruction number eleven. We have already considered the question as to the effect of Young's statement to Evans. Appellant was not entitled to an instruction informing the jury, as a matter of law, that Evans had a right to rely on such statement.

Instructions numbered fourteen and sixteen, tendered by appellant, were given as asked. We find no available error in the instructions given or refused.

It is complained that counsel for appellee made an oral offer to prove in the presence of the jury concerning a matter that appellant's counsel deem clearly incompetent.

The offer was refused and the jury was admonished not to consider it. The court could not reasonably have gone further in its effort to protect appellant.

The evidence as to the kind of a torch that should be used in lighting the furnaces was irrelevant, but harmless. The gas had been lighted in furnace number ten without injury to appellee, and he was engaged in opening the door to the next furnace when the explosion occurred. The expert evidence on the subject of the condition that the valves should be in at the time of lighting the furnaces appears to us to amount to an attempt to prove points that were palpable, but we do not perceive in what manner appellant was prejudiced by the introduction of such evidence. There are a number of further points, of a minor character, relative to the admission and exclusion of evidence, that are suggested as grounds for a new trial. Without prolonging this opinion to discuss such points, we content ourselves with the statement that none of the rulings upon the evidence furnishes ground of reversal, either for the reason that the point is without merit, or because the question has not been properly saved.

Complaint is made that one of the attorneys for appellee was guilty of misconduct in suggesting to the jury, in argument, that certain interrogatories should be answered by the words, "No evidence." At the time in question the judge was in a room adjoining the court room dictating his instructions; the door was open, and it appears that a custom existed in the court below, of which appellant's counsel were advised, that when an objection was made under such circumstances all proceedings would be suspended and the judge would be notified, and return to the bench for the purpose of passing on the objection. Without passing on the propriety of the course pursued by the court in the conduct of its business, it is enough to say that after appellant had, without objection, taken its chance of securing a favorable result before the jury, it was too late to

Perry, etc., Stone Co. *v.* Wilson.

raise the question. *Coleman* v. *State,* 111 Ind. 563; *Robb* v. *State,* 144 Ind. 569; *Townsend* v. *State,* 147 Ind. 624, 37 L. R. A. 294, 62 Am. St. 477; *Blume* v. *State,* 154 Ind. 343. So far as the effect of such argument in producing the answers to interrogatories is concerned, it does not furnish ground of reversal, as affirmative answers would not have created an irreconcilable conflict between the answers to interrogatories and the general verdict. The evidence warranted the jury in finding the appellant liable under the theory on which the case was tried.

There is no error available in the record. Judgment affirmed.