**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**THOMAS P. KELLER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 22 2014, 10:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CRAIG BAKARI THOMAS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1305-CR-256 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable R.W. Chamblee, Judge
The Honorable Elizabeth C. Hurley, Judge
Cause No. 71D08-1204-FB-45

**May 22, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Craig Bakari Thomas (Thomas), appeals his conviction for two Counts of criminal deviate conduct, Class B felonies, Ind. Code § 35-42-4-2; and one Count of sexual battery, a Class D felony, I.C. § 35-42-4-8.

We affirm.

## ISSUE

Thomas raises two issues on appeal, which we consolidate and restate as: Whether the State committed prosecutorial misconduct during its closing argument.

## FACTS AND PROCEDURAL HISTORY

During the spring semester of 2012, K.B., twenty-two years old, and Thomas, forty-eight years old, were both students at the South Bend campus of Ivy Tech Community College. They became acquainted through their acting parts in the college's play, where Thomas was cast as the stepfather of K.B.'s character. K.B. regarded Thomas as a friend; she was not interested in a sexual relationship with him.

During the afternoon of March 12, 2012, Thomas and K.B. met on campus and Thomas suggested they drive to a place in South Bend where K.B. had not been before. Thomas took K.B. to Rum Village Park, a local neighborhood park. While they were talking in the car, Thomas started putting his hands up K.B.'s back. K.B. told Thomas to stop to no avail. K.B. began to exit the car, but Thomas demanded that she remain inside. Afraid, K.B. got back into the car. Thomas said, "I thought you said you touched a dick before." (Transcript pp. 24-25). When K.B. denied this, Thomas became angry. Feeling

2

uncomfortable, K.B. told him that she had an advising appointment in thirty minutes and started texting a friend. Thomas angrily seized K.B.'s phone and threw it on the ground. When K.B. tried to reach for her phone, Thomas hit her on the head with his open hand. Thomas pinned K.B. against the car's window and demanded that she unbutton her pants. Although she initially refused, after further threats by Thomas, K.B. unbuttoned her pants. Thomas then sucked K.B.'s breasts and penetrated her vagina with his finger. While K.B. was crying and screaming for help, he performed oral sex on K.B. Thomas told K.B., "[I]t's just like you're in a game right now . . . so you have to do everything I tell you to do or you'll die." (Tr. p. 31). He said, "[Y]ou got two choices, either you put your hand on my dick and give me a hand job or you give me a blow job." (Tr. p. 36). When K.B refused to do either of those, Thomas grabbed her hair and forced K.B. to place her hand on Thomas' penis. Thomas eventually ejaculated. He retrieved K.B.'s phone and they drove back to the college campus. Thomas asked K.B. not to tell anybody.

The play rehearsal that evening started late and ended early because of the discernable tension between K.B. and Thomas. Due to this tense atmosphere, Professor Craig Parmley (Professor Parmley) asked to speak privately with K.B. K.B. told Professor Parmley that Thomas had "sexually harassed" her. (Tr. p. 45). Professor Parmley wrote a memo to the vice chancellor of student affairs and, at the vice chancellor's recommendation, neither K.B. nor Thomas was allowed to continue in the play. By the following year, K.B. had transferred to Indiana University—South Bend.

When K.B.'s mother picked her up that evening, she noticed that K.B. was scared and disturbed. K.B.'s mother called Thomas and confronted him on the phone. After receiving the phone call, Thomas filed a report at the South Bend Police Department, claiming that he had been threatened over the phone.

K.B.'s parents called the police. K.B. was taken to a local hospital for a sexual assault examination. During the examination, the nurse documented an abrasion to K.B.'s labia majora, consistent with having been inflicted by a fingernail, as well as a bruise to K.B.'s upper left arm. Both injuries appeared to be acute.

On March 19, 2012, South Bend police officer, Kris Hinton (Officer Hinton), took Thomas' statement. Although he initially claimed that he and K.B. may have kissed, later in the interview, Thomas explicitly denied having had sex with K.B. but admitted to having touched K.B.'s breast over her clothing.

On March 31, 2012, the State filed an Information, charging Thomas with Counts I-IV, criminal deviate conduct, Class B felonies, I.C. § 35-42-4-2; and Count V, sexual battery, a Class D felony, I.C. § 35-42-4-8. The State dismissed Count III prior to trial. On March 11 and 12, 2013, a jury trial was conducted. During the State's closing argument, the deputy prosecutor commenced by addressing the witnesses' testimony and jury instructions. Within this framework, the deputy prosecutor commented:

> What does your instruction say about a witness? It says you should not disregard any witness without a reason and without careful consideration. The testimony is not – it's been challenged but the testimony, there's not another story that's going on here. You've not heard the testimony of another story. You heard what [Thomas] told Officer Hinton, but he wasn't raising his right hand swearing to tell the truth. He's not a witness in this case. If you find –

4

(Tr. p. 235). At this point, Thomas objected and requested to approach. During the side

bar conference, the following colloquy ensued:

> [THOMAS]: The jury has been told and counsel well knows that a witness - - that he has no obligation to take the witness stand and - - [] by highlighting the fact that he's not taken the stand and is not a witness I think puts all of that in jeopardy.
>
> [TRIAL COURT]: So is - - you should disregard his comment with respect to the fact that I'll tell you I think you're dangerously close to a common decision not to - - [] You can shake your head no if you want to. I'm sitting listening to what you're saying and I just got done telling you that you're dangerously close to having reached that point to begin with.
>
> [STATE]: All right, sir.
>
> [TRIAL COURT]: There's no story he told the officer, he isn't sworn, he didn't testify. What do you think that amounts to?
>
> [THOMAS]: Well, I think at this point, Judge, we're - - I'd have to ask for a mistrial.
>
> [TRIAL COURT]: No, I'm going to admonish the jury to disregard that, and I'm going to emphasize the fact that he will not be required - -.

(Tr. pp. 235-36). The trial court admonished the jury to disregard the State's final

statement:

> Ladies and gentlemen, I'm going to admonish you to disregard [the State's] comments with respect to the fact that there is no other story, to disregard the fact that the defendant, [], wasn't sworn and didn't testify or whatever his last comments were. We've talked about the defendant's right not to testify in a case. I want you to remember that as it relates to the comments that were just made[.]

(Tr. p. 237). After the admonishment, the deputy prosecutor resumed his closing argument. Later in his closing argument, when reciting the evidence presented at trial, the deputy prosecutor summarized as follows:

> And so what happened? It all went away. She didn't act in that play. She changed schools. She lost it all because of what the defendant did on March 12, 2012.
>
> This is not a question of whether or not there was consent in this. That's not been an issue. It's not been an issue of well, [K.B.] got talked into it. That's not what the defendant is saying. The defendant is not saying, I like [K.B.], we pushed the issue, I tried to get to first base - -

(Tr. p. 239). Thomas objected and requested another side bar conference, at which the following comments were made:

> [THOMAS]: I think he's making comments here about - -
>
> [TRIAL COURT]: Are you talking about in the statement he gave the officer or are you talking about in the courtroom here today? Because, again, do you understand what [counsel] is saying to you, [State]?
>
> [STATE]: What I'm - -
>
> [TRIAL COURT]: The defendant is not saying is nothing because he's not - -
>
> [STATE]: What I'm saying is I'm commenting on her statement, which is what he said to the officers.
>
> [TRIAL COURT]: You damn sure better re-address that you're referring to the statement that he made to the officers.
>
> [STATE]: Okay.

(Tr. pp. 239-40). Upon resuming closing argument, the deputy prosecutor told the jury:

> You heard Officer Hinton's testimony on what the defendant said to him back when he was questioned after being read *Miranda*. You heard what he said and that he had denied any sexual contact. You heard that. If you

6

believe there was sexual contact, I believe you should convict. If you do not believe that there was sexual contact, your duty is to find the defendant not guilty.

And it comes down to [K.B.]'s testimony. You heard her. Do you believe her? . . .

(Tr. p. 240).

At the close of the evidence, the jury returned a guilty verdict on two Counts of criminal deviate conduct and one Count of sexual battery. The jury was unable to reach a verdict on Count I, criminal deviate conduct, which the State later dismissed. On May 13, 2013, the trial court held a sentencing hearing and imposed consecutive sentences of twelve years each on the two Counts of criminal deviate conduct, as well as a two-year concurrent sentence on the sexual battery charge, for an aggregate sentence of twenty-four years.

Thomas now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Thomas contends that the State committed prosecutorial misconduct in its closing argument by impermissibly violating his Fifth Amendment privilege to remain silent. When reviewing a claim of prosecutorial misconduct, we employ a two-step analysis. We must first consider whether the prosecutor engaged in misconduct. *Reynolds v. State*, 797 N.E.2d 864, 868 (Ind. Ct. App. 2003). We then consider all the circumstances of the case to determine whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Id*. However, "[t]he gravity of the

peril as determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct. *Id*.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The privilege extends to the States through the Fourteenth Amendment. *Withrow v. Williams*, 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed. 2d 407 (1993). In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that the Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify at trial. The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence. *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001). The defendant bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent. *Moore v. State*, 669 N.E.2d 773, 739 (Ind. 1996).

Thomas asserts that the State violated his Fifth Amendment rights on two separate instances during its closing argument. We will discuss each remark in turn.

### I. *First Comment*

First, Thomas objected to the State's argument that although K.B.'s testimony was challenged,

> there's not another story that's going on here. You've not heard the testimony of another story. You heard what [Thomas] told Officer Hinton, but he wasn't raising his right hand swearing to tell the truth. He's not a witness in this case.

8

(Tr. p. 235).

Prior to evaluating the statement on its merits, we need to address the State's assertion that Thomas failed to properly object, arguing that his claim is waived because he "did not request the trial court to admonish the jury." (Appellee's Br. p. 13). Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, but he must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Nichols v. State*, 974 N.E.2d 531, 534 (Ind. Ct. App. 2012). *See also Robinson v. State*, 693 N.E.2d 548, 552 (Ind. 1998) (failure to request an admonishment *or* a mistrial following alleged prosecutorial misconduct results in waiver of the issue on appeal).

Reviewing the transcript of the closing argument, it is evident that Thomas made a contemporaneous objection to the disputed statement. Before he had the time to formulate his requested remedy, the trial court interrupted with a strongly worded rebuke to the State. The trial court, in no uncertain words, cautioned the State that it was "dangerously close to a common decision," summarizing "[t]here's no story he told the officer, he isn't sworn, he didn't testify. What do you think that amounts to?" (Tr. p. 236). In light of the trial court's firm warning, Thomas made the reasonable decision to forego the request for an admonishment, as he could infer that it would be insufficient to cure the error, and instead to immediately request a mistrial. We find that Thomas made a proper objection and did not waive his claim for review.

Thomas now argues that the deputy prosecutor's comment was similar to those in *Reynolds v. State,* 797 N.E.2d 864 (Ind. Ct. App. 2003) and *Herron v. State,* 801 N.E.2d 761 (Ind. Ct. App. 2004), in which we concluded that the State improperly commented on the defendant's failure to testify. In *Reynolds*, 797 N.E.2d at 868 (internal citation omitted), the prosecutor stated,

> Was [sic] Aaron and Rachel [two of the State's witnesses] both lying? [Reynolds] takes the 5th Amendment. You take the 5th Amendment when you got something to be concerned about. Incriminating yourself. 5th Amendment. My constitutional right to incriminate myself. That's what that means. So in order for that to apply you have to have done something to incriminate yourself.

In *Herron*, 801 N.E.2d at 765, the State stated in closing that "but as for not presenting the gun to you, that actually fired those bullets, members of the jury, right over there at that table, that's the only one in the courtroom that can certainly tell us where that gun is."

Turning to the merits of the deputy prosecutor's statement, we find that the State made a direct reference to Thomas' decision not to testify. The deputy prosecutor, commenting on the testimony presented at trial, specifically stated that "there's not another story that's going on here." (Tr. p. 235). Unlike the other witnesses, Thomas did not raise "his right hand swearing to tell the truth. He's not a witness in this case." (Tr. p. 235). We agree with the trial court that the deputy prosecutor's comments reasonably could be interpreted as an invitation to draw an adverse inference from Thomas' silence. In fact, we think it is self-evident that the deputy prosecutor was suggesting that the jury

10

draw an inference of guilt from Thomas' decision not to raise his right hand, be sworn in, and tell the jury his story. *See Boatright*, 759 N.E.2d at 1043.

However, the State argues that, even if the deputy prosecutor impermissibly violated Thomas' Fifth Amendment right, the error was harmless. When reviewing an error affecting a defendant's federal constitutional rights, the State has the burden of establishing beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Black v. State*, 794 N.E.2d 561, 565 (Ind. Ct. App. 2003). In support of its argument of harmless error, the State focuses on the strength of its case against Thomas, the trial court's curative instruction, and the final jury instructions stating that a defendant is under no duty to testify.

Unlike *Reynolds* and *Herron*, where no admonishments were issued, the trial court here issued a fairly detailed caution to the jury. Not only did the trial court rephrase the impermissible statements made by the deputy prosecutor, it also reminded the jury to consider the statement in light of a defendant's right not to testify. "It must be presumed that the jury are [people] of sense, and that they will obey the admonition of the court when told that they must not permit the reference to the failure of the defendant to testify, to influence their minds[.]" *Moore*, 669 N.E.2d at 741 (citing *Blume v. State*, 56 N.E.771, 776 (Ind. 1900)). Absent an argument that the admonishment was ineffective, we conclude that the trial court's curative instruction defused the impact of the State's improper remark. *See Bernard v. State*, 540 N.E.2d 23, 25 (Ind. 1989); *Parsons v. State*, 472 N.E.2d 915 (Ind. 1985).

## II. *Second Comment*

11

Next, Thomas contends that the State's statement that "[t]he defendant is not saying, I like [K.B.], we pushed the issue, I tried to get to first base . . ." also amounted to a violation of his Fifth Amendment right to not to testify. Again, Thomas objected to the State's closing argument. However, unlike with the previous statement, Thomas failed to request a remedy for the perceived violation of his rights. Although the trial court interrupted before Thomas could complete his argument, the trial court did not admonish the jury. Instead, the trial court, again cautioning the deputy prosecutor, offered the State the opportunity to "re-address that [he was] referring to the statement that [Thomas] made to the officers." (Tr. p. 240). Thus, because Thomas failed to request an admonishment or mistrial, his argument is waived for our review. *See Robinson,* 693 N.E.2d at 552.

To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error. *Nichols*, 974 N.E.2d at 535. Fundamental error is an extremely narrow exception to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Id.* For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Id.* The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id.* Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which

12

he would have been entitled. *Id.* The mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred. *Id.*

Evaluating the State's statement within the context it was made, we find that the comment did not amount to an indirect reference to Thomas' decision not to testify. Rather, in its clarification, the State clearly alluded to the strength of the evidence against Thomas. By referencing Thomas' interview to Officer Hinton, the State immediately compared Thomas' statement with K.B.'s testimony at trial. It is proper for the State to comment on the lack of evidence by the defense "as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the defendant's failure to testify." *Schmidt v. State*, 816 N.E.2d 925, 945 (Ind. Ct. App. 2004), *trans. denied.* In other words, the deputy prosecutor's comment is not one that the jury may reasonably interpret as an invitation to draw an adverse inference from Thomas' silence. *See id.* Thus, Thomas failed to meet his initial burden that the State's argument was improper.

CONCLUSION

Based on the foregoing, we conclude that, although the State committed prosecutorial misconduct in its first statement, the error was harmless. Additionally, with respect to the second statement, we find that the State did not commit prosecutorial misconduct.

Affirmed.

ROBB, J. and BRADFORD, J. concur