May Term,
1845.

JACOBS
v.
FINKEL.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. J. Brown*, for the plaintiffs.

*C. Fletcher* and *O. Butler*, for the defendant.

---

## JACOBS *v.* FINKEL.

A written agreement cannot be controlled by setting up a contemporaneous verbal understanding of the parties inconsistent with it.

A plea professing to answer the whole declaration, and answering only a part, is bad.

The defendant cannot introduce a witness to prove facts which, if true, would show that the witness, and not the plaintiff, was entitled to the subject-matter of the suit.

A motion to continue the cause in order to procure the testimony of an interested witness, may be overruled.

If a contract, materially different from the one described in a count, be given in evidence by the plaintiff without objection, its admission is not error ; but such contract will not support the count.

*Tuesday,
July 8.*

ERROR to the *Wayne* Circuit Court.

DEWEY, J.—Assumpsit by *Finkel* against *Jacobs*. The declaration contains four counts. The first count alleges that, on the 14th of *February*, 1839, the plaintiff and defendant made a written agreement, by which the defendant bargained and sold to the plaintiff " twenty acres of land, known by the name of *Evans' Red House*, and one acre across the National road, and five acres of wood-land east of the *Jacksonburgh* road," for the sum of 1,300 dollars, 500 dollars to be paid on the 1st of *March*, 250 dollars on the 1st of *March*, 1840, 250 dollars on the 1st of *March*, 1841, and 300 dollars on the 1st of *March*, 1842, with six *per cent.* interest from the date ; that the plaintiff paid the defendant 500 dollars on the 1st of *March*, 1839, 100 dollars on the 1st of *March*, 1840, and the residue of the purchase-money with all interest on the 1st of *March*, 1842; and that the defendant had not, on the day of making the contract, nor at any time afterwards, any title whatever to the lands, and would not and could not make a title to the same.

Second count.—That on the 14th of *February*, the defendant bargained and sold to the plaintiff certain other lands (described as in the first count) for the sum of 1,300 dollars,

then and there paid by the plaintiff; and that the defendant promised the plaintiff he had good right and title to the lands; when in fact he had not then, nor at any time since, any title at all to the premises, or to any part of them, which he well knew.

Third count.—Money had and received.

Fourth count.—That the defendant, on the 14th of *February*, 1839, made his agreement in writing, by which he agreed that he had bargained and sold to the plaintiff certain other lands, (described as in the first and second counts, for the same price, and upon the same payments as in the first count,) and by which he agreed that, upon the payment of the purchase-money, he would make the plaintiff a deed in fee-simple for the lands; that the plaintiff had paid the defendant 1,000 dollars of the purchase-money before the last instalment became due; and that the defendant never had any title to the premises, and could not convey them.

The defendant pleaded the general issue, and a special plea purporting, in its commencement, to answer the whole declaration, which special plea was in substance as follows, viz.: That the one acre and the five acres of land, mentioned and described in the written agreement set forth in the declaration, as being in addition to the 20 acres known by the name of the *Evans' Red House* tract, were not in addition thereto, but formed a part of that tract, and were so understood to do by the parties; that, at the date of the contract, the title to the land was in one *Edward Jacobs*, as whose agent the defendant contracted to sell it to the plaintiff, which he knew; that *E. Jacobs* was ready, at all times after the making of the contract, to convey the land to the plaintiff upon his paying the purchase-money either to *E. Jacobs* or the defendant; that, at the time of pleading, the title was in the defendant, who was ready to convey it to the plaintiff upon the payment of the purchase-money, which he never paid to the defendant nor to *E. Jacobs*. The plaintiff demurred to the special plea, and the demurrer was sustained.

The defendant then moved the Court to continue the cause. The motion was founded upon an affidavit setting forth that *E. Jacobs*, who lived in *Pennsylvania*, was a material witness for the defendant, by whom he expected to prove

that the defendant, in making the contract mentioned in the declaration, acted as the agent of the witness, in whom was the title to the land contracted to be sold to the plaintiff, all which was known to the plaintiff who agreed to receive a deed from the witness, and did actually accept one from him. The motion was overruled.

The cause was submitted to the Court for trial under the general issue. Judgment for the plaintiff.

The plaintiff gave in evidence, without objection, a written instrument, dated on the 14th of *February,* and signed by the plaintiff and defendant, by which the latter "bargained and sold" to the former "20 acres of land, known by the name of *Evans' Red House,* one acre across the National road, and five acres of wood-land east of the *Jacksonburgh* road," for 1,300 dollars, &c., corresponding in the terms of payment with those of the agreement set out in the first and fourth counts. The plaintiff also proved the payment of the first 500 dollars specified in the agreement, and two years' interest on the residue of the purchase-money. There was evidence tending to prove that, at the date of the contract, on the 14th of *February,* 1839, and, at the time the last instalment was due, on the 1st of *March,* 1842, the defendant had no title to the premises.

The questions are, did the Court decide correctly in sustaining the demurrer to the special plea, in refusing a continuance, and in rendering judgment for the plaintiff? We think the decisions were all correct.

The plea is bad for two reasons; first, because it professes to answer the whole declaration, but in fact answers but a part of it. The declaration contains four counts, in the first and last of which a written agreement is set forth. The plea, after its commencing clause, has reference to these two counts only, leaving the other two entirely unnoticed. The other defect of the plea is, that it attempts to control a written agreement by setting up a contemporaneous verbal understanding of the parties inconsistent with it. The written agreement, alleged in the first and fourth counts, is for the sale of 20 acres of land known by the name of *Evans' Red House,* and also for six acres besides, making in all 26 acres. The plea alleges the real understanding of the parties

to have been, that the six acres were not in addition to the 20 acres designated by name, but were included in and formed a part thereof. To allow such a plea would be permitting a written contract to be controlled by a verbal one, a principle which we have again and again held to be inadmissible. *Odam* v. *Beard*, 1 Blackf. 191.—*Foley* v. *Cowgill*, 5 *id*. 18.— *Burge* v. *Dishman*, *id*. 272.— *Graves* v. *Clark*, 6 *id*. 183.— *Wilson* v. *Black*, *id*. 509.—*Mahan et al.* v. *Sherman*, at this term.

We think the continuance was correctly refused; first, because a part of the testimony sought to be procured from the absent witness, was liable to the same objection as that last urged against the plea. The written contract set up in the declaration does not, in direct words, contain a promise on the part of the defendant to make a deed to the plaintiff for the land contracted by the former to be sold to the latter; but as the defendant sold the land to the plaintiff and was to receive the purchase-money from him, the legal effect of the contract was that he, the defendant, should convey the title; but it was proposed to prove by the witness, that the real understanding of the parties was that the plaintiff should receive the deed from the witness. This, as has been already shown, was clearly not allowable. There was, moreover, an objection to the witness which rendered him entirely incompetent. He was interested in the event of the suit. It was proposed to prove by him, that the defendant, in making the contract of sale with the plaintiff, acted as the agent of the witness, in whom was the title to the property contracted to be sold; that the plaintiff had full knowledge of these facts; and that the witness did actually make a conveyance of the property to the plaintiff which was accepted by him. The object of the action, as appears by the declaration, was to recover back money which had been paid upon a consideration which had failed, to wit, money paid by the plaintiff for land which the defendant contracted to sell to him, but to which it was alleged he could not make a title. Now if the defendant could establish by the witness that he, the witness, was the real owner of the land; that he had sold it by his agent; and that the plaintiff had actually received a deed from him in fulfilment of the contract made by such agent;

it is clear that the witness, and not the plaintiff, can maintain an action against the defendant for the money received by him on account of the land; and that he can also support an action against the present plaintiff for that portion of the purchase-money not paid. It is plain, we think, that the witness was interested to defeat this suit.

As to the decision of the Court upon the evidence: Had there been no counts in the declaration but those which describe the written contract, the testimony would not have justified the judgment. The written contract, as declared on, was for the sale of the twenty acres of land known by the name of *Evans' Red House*, and for one acre and for five acres besides. The instrument given in evidence was a different contract. The land described by it was not 20 acres known by the name of *Evans' Red House*, and one acre, &c., and five acres, &c., as alleged in the declaration, but 20 acres of land known by the name of *Evans' Red House* — one acre and five acres lying, &c. By this description, we understand the six acres to be included in the *Red House* tract. Unless the instrument receives this construction, it will be impossible to identify the six acres, and the contract as to them is void for that reason. But by viewing the six acres as a part of the 20 acres, the whole tract can be easily identified by the specific name given it. Had the variant contract been objected to, it could not legally have been given in evidence under the special counts. As it was, its admission did not constitute an error, but it was not sufficient to sustain those counts, founded on a different contract. But there was one count under which it was proper to be given in evidence — the count for money had and received. The construction of the contract really made by the parties, most favourable to the defendant, is, that he was bound to make the plaintiff a deed for the premises on the day the last instalment of the purchase-money became due, (which was the 1st of *March*, 1842,) if the plaintiff should then be ready to pay him the full price of the land; and this, we think, is the true construction. As there was evidence that the plaintiff had paid a part of the purchase-money before that time, and as there was also evidence tending to show that the defendant had not then, or at any time,

title to the premises which he contracted to sell, we cannot say the Court erred in rendering a judgment for the plaintiff.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Rariden*, for the plaintiff.

*J. S. Newman*, for the defendant.