Thomas O. MOORE, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 12S02–9507–CR–838.

Supreme Court of Indiana.

July 18, 1996.

Rehearing Denied Dec. 30, 1996.

Charles M. Crouse, Jr., Frankfort, for Appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

Appellant Thomas Moore appeals his convictions for rape [1] and forcible oral sex.[2] The Court of Appeals set aside the convictions based on the prosecutor's reference during final argument to Moore's decision not to testify. We granted transfer and now affirm the convictions.

### I. Facts

On September 14, 1987, the victim in this case, whom we shall refer to as A.B., was driving home after attending an evening class. As she traveled on a dark and desolate portion of highway, a car appeared in her rearview mirror. Its headlights repeatedly brightened and dimmed, and A.B. thought she saw a red light on the vehicle. Believing it was a police car, she pulled over, and it drew up behind her.

A figure left the car. As the stranger approached, he shined a flashlight into her back seat and then into her eyes. He asked her if she knew how fast she had been driving and demanded her license and registration. She placed the documents in his exposed hands. He ordered her to move her car onto a side road, and she complied. A.B. then exited her car at the man's request. With the flashlight focused in her eyes, he tested her sobriety and proceeded to "arrest"

---

1. Ind.Code Ann. § 35–42–4–1 (West Supp.1995).

2. Ind.Code Ann. § 35–42–4–2 (West 1986) ("criminal deviate conduct").

her, using a plastic cord to bind her hands behind her back. He took off her eyeglasses, blindfolded her, and shoved her into his own car.

The man drove around for a time before stopping to kiss A.B. and fondle her breasts. Removing her pants and hitting her legs until she uncrossed them, the assailant forced her to submit to cunnilingus, and then he raped her. Later, when A.B. refused to perform fellatio, he strangled her into submission. Then he raped her twice more before cutting her bindings and dumping her near her car. Police arrested Moore for the crimes, and the State charged him with one count of rape and one count of forcible oral sex,[3] both as class B felonies.

At trial, the key issue was the identity of the police impersonator. A.B. provided a general physical description, but because of the flashlight and blindfold, she could not visually identify Moore as her assailant. The prosecution showed that hair and body fluids recovered from A.B. were consistent with specimens taken from Moore. The State also introduced evidence that a latent fingerprint lifted from A.B.'s vehicle registration matched Moore's. In defense, Moore presented three alibi witnesses: his ex-wife, his girlfriend, and a friend. Moore did not testify.[4]

The jury convicted Moore on both counts. The trial judge sentenced him to twenty years for rape and to a consecutive term of twelve years for forcible oral sex. Moore makes the following claims of error:

(1) the prosecutor referred to Moore's decision not to testify,

(2) the prosecutor committed various acts of misconduct,

(3) the warrant under which the police obtained biological specimens from him was defective, and

(4) the evidence was insufficient to support the convictions.

## II. The No–Comment Rule

Moore requests reversal because the prosecutor referred to his decision not to testify. In response to Moore's criticism that the State's evidence was imprecise, the prosecutor remarked:

when you look at the defendant's case and he chose to put on a case in this, *he didn't choose to testify which is his right, and he certainly doesn't, isn't compelled to testify* but he did choose to put on witnesses, that by examination of all the evidence, the more precise case which is [the State's] is not a matter of science but beyond a reasonable doubt.

(R. 1684–85.) Defense counsel moved for a mistrial, but the court denied the motion. Instead, the court instructed the jurors to disregard the remark and polled them.[5]

■■■ This remark literally referred to Moore's silence. In light of the prosecutor's immediate effort at correction, however, we

---

3. This count was based solely on the act of fellatio.

4. Moore had been convicted of criminal confinement and attempted forcible oral sex based on a similar incident that occurred in Madison County in October 1986. The confinement conviction was later affirmed, but the oral sex conviction was reversed because of an erroneous jury instruction. *Moore v. State,* No. 48A02–8909–CR–472, 573 N.E.2d 483 (Ind.Ct.App. May 29, 1991). In the present case, the trial judge ruled that the State could impeach Moore with the confinement conviction should he testify but that it could not introduce extrinsic evidence of the oral sex offense. On retrial in the Madison County matter, Moore was again convicted of attempted forcible oral sex, but the conviction was later reversed because the trial judge had erroneously admitted evidence of Moore's conviction in the present

case. *Moore v. State,* 653 N.E.2d 1010 (Ind.Ct. App.1995), *transfer denied.*

5. In reversing Moore's convictions the Court of Appeals questioned the effectiveness of the judge's polling of the jurors. She had asked, "Can you assure me that the Prosecutor's comment about testifying will not be held against the defendant?" The question asked jurors for an *affirmative* assurance that they would *not* consider the remark. Literally, the appropriate answer would have been "Yes," but each juror answered, "No." Absolutely nothing in the record, however, indicates that anyone present—particularly the judge or defense counsel—took the jurors to mean that they were all hopelessly biased. The only reasonable interpretation of the incident is that everyone believed each juror to say, *No, I will not hold the remark against the defendant.*

think it was inadvertent.[6] Moore bears the burden of proving that the remark penalized his exercise of the right to remain silent. *See* U.S. Const.Amend. V; *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). If he has shown that the remark was improper, we must presume that reversal is necessary until the State proves beyond a reasonable doubt that any error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The question then is whether the jury would have found Moore guilty without the improper remark. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). We conclude that the remark in this case was not improper and that, even if it were, it was harmless.

### A. Propriety of the Remark

At common law, a person with an interest in the outcome of a civil or criminal proceeding was not competent to testify. 3 William Blackstone, Commentaries on the Laws of England 369 (ed. John L. Wendell 1852) (stating that interested parties could not testify in civil proceedings); 4 *id.* at 356 (stating that civil evidence rules applied with few exceptions to criminal proceedings); *see Jacobs v. Finkel*, 7 Blackf. 432, 435–36 (1845) (civil proceeding). Criminal defendants thus could not testify in their own behalf at trial. *Ferguson v. Georgia*, 365 U.S. 570, 573–75, 81 S.Ct. 756, 758–60, 5 L.Ed.2d 783 (1961); *Whelchell v. State*, 23 Ind. 89, 91 (1864). In the early nineteenth century, courts tried to minimize the harshness of disqualification by allowing criminal defendants to make unsworn statements, often without the assistance of counsel. *Ferguson*, 365 U.S. at 582–87, 81 S.Ct. at 763–66.[7] In the years after the Civil War, almost every state and the federal government abrogated the common law disqualification of criminal defendants. *Id.* at 577 & n. 6, 81 S.Ct. at 761 & n. 6.

The rule against prosecutorial comment on a defendant's decision not to testify was created in conjunction with the removal of disqualification. Defendant competency was principally opposed by those who feared it would lead to coerced self-incrimination. *Id.* at 578–80, 81 S.Ct. at 761–62. Jurors might infer guilt if a competent defendant chose not to take the stand. *Rock v. Arkansas*, 483 U.S. 44, 50 n. 5, 107 S.Ct. 2704, 2708, n. 5, 97 L.Ed.2d 37 (1987); *Wilson v. United States*, 149 U.S. 60, 66, 13 S.Ct. 765, 766, 37 L.Ed. 650 (1893). To allay this fear, many of the competency statutes bound prosecutors to silence regarding a defendant's decision not to testify. *Ferguson*, 365 U.S. at 580, 81 S.Ct. at 762.[8]

Indiana was part of this trend. Our legislature codified the common law disqualification of interested witnesses in the 1852 code. *See* Note, *Testimonial Privilege and Competency in Indiana*, 27 Ind. L.J. 256, 258 n. 5 (1951). The disqualification rule in civil proceedings applied only to the parties themselves and a few other classes of interested persons. 2 Rev. Stat. Ind., pt. 2, ch. 1, § 238, at 80 (1852). Our statutes followed Blackstone in providing that rules of civil competency would apply in criminal proceedings, but the victim and the defendant's accomplices, with their consent, would be compe-

---

6. Moore argues that the comment was part of an intentional scheme to prejudice the jury. This contention mischaracterizes the record.

7. Criminal defendants had previously been allowed to comment during trial, but English courts repudiated the practice around the time that the freedom from compulsory self-incrimination emerged. *See* 2 John Henry Wigmore, Evidence § 575, at 809 (James H. Chadbourn ed.1979). A rule disqualifying parties from testifying in civil trials had arisen at an earlier time. *See id.* at 806–07. The recognition of the freedom from compulsory self-incrimination may have encouraged the contemporaneous disapproval of defendant comments in criminal trials.

*See De Luna v. United States*, 308 F.2d 140, 148 (5th Cir.1962) (per Wisdom, J.) (Testimonial disqualification "[c]arr[ied] the right to its logical conclusion—although it now seems a reductio ad absurdum.").

8. Concerns about self-incrimination inspired these policies, and courts later recognized a constitutional dimension to the no-comment rule. Our Court recognized the no-comment rule as falling within the protection of the Indiana Bill of Rights early in this century. *Keifer v. State*, 204 Ind. 454, 184 N.E. 557 (1933). More than thirty years later, the U.S. Supreme Court held that the Fifth Amendment required such a rule. *See Griffin*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

tent. 2 Rev. Stat. Ind., pt. 3, ch. 1, § 90, at 372 (1852).

A decade later, the legislature eliminated altogether the disqualification of parties in civil litigation. Act of Mar. 11, 1861, § 2, 1861 Ind. Acts 47, 51–52. This Court held that even though the criminal competency provision continued to incorporate the civil competency rules by reference, the legislature intended the criminal rules to incorporate the civil rules as they had existed in 1852. The intervening abolition of party disqualification in civil actions thus did not extend to defendants in criminal proceedings. *Hoagland v. State*, 17 Ind. 488, 489–90 (1861).

A decade later, the legislature abolished the disqualification of criminal defendants. *See* Act of Mar. 10, 1873, sec. 1, 1871 Ind. Acts 227, 227–28.[9] This statute "gave to a defendant in a criminal cause the privilege of testifying in his own behalf," *Fletcher v. State*, 49 Ind. 124, 130 (1874), and also provided that

> if the defendant do not testify, his failure to do so *shall not be commented upon, or referred to in the argument of the cause,* nor commented upon, referred to or in any manner considered by the jury trying the same, and it shall be the duty of the court, in such case, to instruct the jury as to their duty under the provisions of this section.[10]

1873 Act, sec. 1 (emphasis added).[11] This Court initially construed the no-comment statute very broadly, holding that "when a defendant in a criminal cause declines to testify in his own behalf, *absolute silence* on the subject is enjoined on counsel in their argument on the trial." *Long v. State,* 56 Ind. 182, 186 (1877) (emphasis added); *see also Showalter v. State,* 84 Ind. 562 (1882).

Nevertheless, this Court soon limited the impact of the rule of absolute silence by distinguishing between direct and indirect references. Though direct references generally violated the no-comment statute, they did not necessarily mandate reversal. *See Knopp v. State,* 233 Ind. 435, 120 N.E.2d 268 (1954); *Pollard v. State,* 201 Ind. 180, 166 N.E. 654 (1929); *Davis v. State,* 197 Ind. 448, 151 N.E. 329 (1926); *Blume v. State,* 154 Ind. 343, 56 N.E. 771 (1900). Indirect references generally did not lead to reversal. *See Davis v. State,* 200 Ind. 88, 161 N.E. 375 (1928); *Frazer v. State,* 135 Ind. 38, 34 N.E. 817 (1893).

Spurred by the U.S. Supreme Court's holding in *Griffin* that prosecutorial comments on a defendant's silence violated the Fifth Amendment, federal courts developed a less formalistic rule. Apparently originating in the Eighth Circuit as a rule of statutory construction, *Morrison v. United States,* 6 F.2d 809 (8th Cir.1925), the standard gained wider attention through a Tenth Circuit ruling, *Knowles v. United States,* 224 F.2d 168 (10th Cir.1955). Under this standard, "[t]he prosecutor's comments are to be tested by whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily

---

9. Formerly codified at Ind.Code § 35–1–31–3 (1971) (repealed 1981).

10. We invalidated the requirement of judicial instruction on grounds it interfered with a defendant's autonomy to decide whether to remain silent. *See Priest v. State,* 270 Ind. 449, 386 N.E.2d 686 (1979); *Gross v. State,* 261 Ind. 489, 306 N.E.2d 371 (1974).

11. In *Wilson v. United States,* 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893), the U.S. Supreme Court read a similar no-comment rule into the less explicit federal act, *see* Act of Mar. 16, 1878, 20 Stat. 30 (codified at 18 U.S.C. § 3481 (1994)). In explaining why the no-comment rule was desirable, the Court clearly recognized the importance of ensuring that a defendant be able to choose freely between testimony and silence:

> It is not every one who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not every one, however honest, who would therefore willingly be placed on the witness stand. The statute, in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be a witness, particularly when they may have been in some degree compromised by their association with others, declares that the failure of a defendant in a criminal action to request to be a witness shall not create any presumption against him.

149 U.S. at 66, 13 S.Ct. at 766.

take it to be comment on the defendant's failure to testify." *United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.1968) (citing *Knowles* ). Although the mode of applying this rule may vary, the *Morrison–Knowles* test has been universally adopted by federal circuits. *See Butler v. Rose,* 686 F.2d 1163, 1170 n. 6 (6th Cir.1982) (discussing "universal application" of the test).

Indiana's neighbors have also applied standards similar to the *Morrison–Knowles* test. *See, e.g., People v. Arman,* 131 Ill.2d 115, 137 Ill.Dec. 5, 545 N.E.2d 658 (1989); *People v. Hopkins,* 52 Ill.2d 1, 284 N.E.2d 283, 286 (1972) (The question is "whether 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify.' ") (quoting *Watt v. People,* 126 Ill. 9, 18 N.E. 340, 350 (1888)); *State v. Cooper,* 52 Ohio St.2d 163, 370 N.E.2d 725, 733 (1977), *vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157 (1978) (applying *Morrison–Knowles* standard); *People v. Guenther,* 188 Mich.App. 174, 469 N.W.2d 59, 62 (1991) (same); *People v. Ebejer,* 66 Mich. App. 333, 239 N.W.2d 604, 611 (1976) ("There was no deliberate attempt on the part of the prosecutor to coerce the testimony of the accused or to invite the jury to draw adverse inferences in the event the defendant declined to testify."); *Tinsley v. Commonwealth,* 495 S.W.2d 776, 782 (Ky.1973) ("The test as concerns indirect comments is whether the comment is reasonably certain to direct the jury's attention to the defendant's failure to testify."); *Anderson v. Commonwealth,* 353 S.W.2d 381, 386 (Ky.1961) (same).

In *Rowley v. State,* 259 Ind. 209, 285 N.E.2d 646 (1972), we acknowledged the *Morrison–Knowles* test, *id.* at 213, 285 N.E.2d at 648, and extended Indiana's no-comment rule to apply to indirect as well as direct comments. We objected to a construction of this test, however, that would require a defendant to show that the jury *necessarily* interpreted a prosecutor's remark as a comment on his silence, *e.g. United States v. LeQuire,* 943 F.2d 1554, 1567 (11th Cir.1991) ("The question is not whether the jury possibly or even probably would view the challenged remark in this manner but whether

the jury *necessarily* would have done so." (internal quotation marks omitted)). Instead, we adopted a "more reasonable test," *id.* at 213, 285 N.E.2d at 648:

> "[A] comment made by a prosecuting attorney, directly or indirectly, *which is subject to interpretation* by a jury as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial right of the defendant."

*Id.* (quoting *Williams v. Wainwright,* 416 F.2d 1042 (5th Cir.1969)) (emphasis added) (applying Florida law). Thus, a statement violates *Rowley* if a jury reasonably could have interpreted it as a "comment" on a defendant's silence.

While the *Rowley* standard focuses on the possible ways in which a jury might interpret a prosecutor's remark, some courts have used the *Morrison–Knowles* test to probe, in addition, the subjective intent of a prosecutor. *See, e.g., United States v. Tarazon,* 989 F.2d 1045 (9th Cir.1993); *United States v. Monaghan,* 741 F.2d 1434 (D.C.Cir.1984). There may be an understandable impulse to deem intentional comments improper and inadvertent ones valid. Courts have occasionally refused to find a remark erroneous because they have concluded that "the motive behind the statement" was benign or the remark was "a slip of the tongue," *United States v. Dorsey,* 819 F.2d 1055, 1061 (11th Cir.1987).

Under *Rowley,* the propriety of a prosecutor's remark does not turn on a inquiry into his or her subjective motivation. The purpose of the no-comment rule is to protect a defendant's right to remain silent by preventing prosecutors from "making its assertion costly." *Griffin,* 380 U.S. at 614, 85 S.Ct. at 1233. This result can occur if a comment prompts jurors to infer guilt from a defendant's silence. It seems quite irrelevant for the purpose of the no-comment rule—protecting unfettered exercise of the right to remain silent—whether or not a prosecutor actually intended to produce an inference of guilt. It is the effect of a remark, not the intent of its speaker, that frustrates a defendant's exercise of the right to remain silent at trial.

As noted above, the prosecutor in Moore's case made a direct, literal reference to Moore's decision not to testify. It seems self-evident that the prosecutor's statement—"he didn't choose to testify," (R. 1684)—is "subject to interpretation" as a "comment" on Moore's decision not to testify, *Rowley*, 259 Ind. at 213, 285 N.E.2d at 648. In fact, some courts have held that any direct reference to a defendant's silence is improper *per se.* They inquire into the effect of a remark only if the remark is indirect. *See, e.g., United States v. Buege*, 578 F.2d 187 (7th Cir.1978); *Spalla v. Foltz*, 788 F.2d 400 (6th Cir.1986); *United States v. Durant*, 730 F.2d 1180 (8th Cir.1984).[12] This Court has also implied that direct references are always improper. *See, e.g., Brooks v. State*, 598 N.E.2d 519, 520 (Ind.1992).

The U.S. Supreme Court, however, has declined to give *Griffin* an absolutist reading and has rejected the argument that all "direct" references are improper. *United States v. Robinson*, 485 U.S. 25, 31–32, 108 S.Ct. 864, 868–69, 99 L.Ed.2d 23 (1988). It is possible to construe the term "comment" not as a mere factual observation but more substantively as "an observation or remark *expressing an opinion or attitude* concerning what has been seen or heard or concerning the subject at hand." *Webster's Third New Int'l Dictionary* 456 (Philip Babcock Gove ed.1993) (emphasis added). In *Robinson*, the Court seemed to do just that, reasoning that "[w]here the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated." 485 U.S. at 32, 108 S.Ct. at 869. *See also Butler*, 686 F.2d at 1170 ("At the present time the rule as stated and developed by the Supreme Court appears to be that neither a trial court nor a prosecutor may instruct or suggest to a jury that it may or should draw an inference of guilt from a defendant's election not to testify.").[13]

 We adhere to our decision in *Rowley*, as circumscribed by the subsequent holding in *Robinson.* The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.[14] We hold, under this *Robinson–Rowley* test, that when Moore's prosecutor inadvertently mentioned Moore's decision not to testify and then immediately attempted to correct that slip of the tongue, a reasonable jury could not have interpreted the statement as a suggestion to infer guilt from Moore's silence.

### B. Harmless Error

 Even if we thought the statement by Moore's prosecutor was improper under the federal Constitution, we would not reverse the convictions. A court may affirm a conviction despite an improper prosecutorial comment if it can "declare a belief that [the comment] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The State bears the burden of proof and, with it, the risk of plausible uncertainty. 386 U.S. at 24, 87 S.Ct. at 828. Although a reviewing court must consider a counterfactual question—whether the jury would have convicted the defendant absent the comment, *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96

**12.** In fact, *Morrison* itself seems to suggest this distinction. 6 F.2d at 811.

**13.** This Court has also occasionally construed *Griffin* in a similar way. *See, e.g., Parsons v. State*, 472 N.E.2d 915, 916 (Ind.1985) ("Any comment which may be interpreted as implying that the defendant must be guilty or he would have testified cannot be condoned.").

**14.** The Indiana Bill of Rights also protects a defendant's right to remain silent at trial, Ind. Const. Art. I, § 14; *see Keifer*, 204 Ind. 454, 184 N.E. 557, and it is not necessarily coextensive with the federal Fifth Amendment, *compare Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) (holding self-incrimination right not violated where, over objection of defendant, judge gave final instruction directing jury not to draw any inferences from fact defendant had not testified) *with Priest v. State*, 270 Ind. 449, 386 N.E.2d 686 (1979) (refusing to follow *Lakeside* in construing state constitutional protection against compulsory self-incrimination). Nevertheless, because Moore has not provided any cogent argument based on the Indiana Constitution, we will not consider its application. *St. John v. State*, 523 N.E.2d 1353, 1355 (Ind.1988).

(1983)—courts have developed a number of methods for determining an answer. We think the State has met its burden in this case.

Most concretely, courts have looked for obvious indications of influence or impartiality in the behavior of the jury. For example, the return of not-guilty verdicts in matters that would have been equally affected by an improper comment suggests that the comment was not prejudicial. *See LeQuire*, 943 F.2d at 1567; *cf. Splunge v. State*, 641 N.E.2d 628, 634 (Ind.1994) (Sullivan, J., dissenting) (objecting to finding of harmless error where prior trial had resulted in hung jury). In the typical case, however, as in this case, such indicators are not present.

Courts have also developed less direct approaches to the question of prejudice. They have analyzed the probability that an improper comment altered the jury verdict. This probability is generally a function of three factors: the persuasiveness of the comment, the relative strength of the State's case, and the effectiveness of the trial judge's response to the comment. *See Chapman*, 386 U.S. at 22, 87 S.Ct. at 827 ("[H]armless error rules can work very unfair and mischievous results when, for example, *highly important and persuasive evidence, or argument*, though legally forbidden, finds its way into a trial in which *the question of guilt or innocence is a close one.*" (emphasis added)); *Blume*, 154 Ind. at 356, 56 N.E. 771 ("It must be presumed that the jury are [people] of sense, and that they will obey *the admonition of the court* when told that they must not permit the reference to the failure of the defendant to testify, to influence their minds." (emphasis added)). Such formulas are not mathematical. The question is whether a court, after comparing these factors, is confident that the improper comment did not alter the verdict.

Persuasiveness is relevant because the central issue is whether a comment has prejudiced the jury. Obviously, statements that implore jurors to infer guilt from silence are the greatest threat. *See Anderson v. Nelson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam); *Tarazon*, 989 F.2d at 1052; *cf. United States v. Passaro*, 624 F.2d

938, 945 (9th Cir.1980) (refusing to reverse conviction where prosecutor had made "no attempt to link a conclusion of guilt with defendant's silence."). Remarks directly referring to a defendant's silence are also more prejudicial than indirect references. *See Bernard v. State*, 540 N.E.2d 23, 25 (Ind. 1989) (The comments "were prolix and only marginally improper because vague and disjointed.").

Similarly, extensive or repetitive comments are generally more serious than a single, isolated statement. *Anderson*, 390 U.S. at 524, 88 S.Ct. at 1133–34; *Chapman*, 386 U.S. at 26, 87 S.Ct. at 829. The use of inflammatory rhetoric or suggestive body language may also make improper comments more influential than less provocative ones. *See LeQuire*, 943 F.2d at 1567; *United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1270 (2d Cir.1969). Intent, too, can be relevant, for intentional comments are likely to be more effective than inadvertent ones. *See Splunge*, 641 N.E.2d at 630. Finally, a comment's larger context may reveal that jurors would have been more likely to interpret the statement one way than another. *Cf. Hopkins v. State*, 582 N.E.2d 345, 348 (Ind.1991) (holding remark not improper where it was "focused not on the absence of testimony from the defendant, but rather on [other evidence]").

In addition to the persuasiveness of a comment, a court also should consider the strength of the State's case. Courts have sometimes resolved the harmless error question based solely on the "overwhelming" nature of the evidence against the defendant. *Lee v. State*, 531 N.E.2d 1165 (Ind.1988); *Freeman v. Lane*, 962 F.2d 1252, 1262 (7th Cir.1992). While that factor may be determinative in some cases, the inquiry is often more complex. *See, e.g., Splunge*, 641 N.E.2d at 630 (finding error harmless after considering intent of prosecutor, directness of reference, extensiveness of reference, and overwhelming nature of evidence). Nevertheless, the impact of even an objectively persuasive comment depends on the relative strength of the case against a defendant. *See Anderson*, 390 U.S. at 524, 88 S.Ct. at 1133–34; *United States v. Pallais*, 921 F.2d

684 (7th Cir.1990); *United States v. Ashford*, 924 F.2d 1416 (7th Cir.1991). In effect, a court must measure the strength of the case by reviewing a redacted replay of the trial through the jurors' eyes. See, e.g., *United States v. Hasting*, 461 U.S. 499, 511–12, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96; *Fontaine v. California*, 390 U.S. 593, 595–96, 88 S.Ct. 1229, 1230–31, 20 L.Ed.2d 154 (1968) (per curiam); *Williams v. Lane*, 826 F.2d 654, 667 (7th Cir.1987).

Finally, a court must assess the effectiveness of any corrective measures taken by the trial judge. In *Blume*, 154 Ind. 343, 56 N.E. 771, we applied a kind of harmless error rule to uphold a conviction despite a comment that was improper under Indiana's former no-comment statute. We reasoned that

> [i]t must be presumed that the jury are [people] of sense, and that they will obey the admonition of the court when told that they must not permit the reference to the failure of the defendant to testify, to influence their minds.... We do not think that [an improper comment] should, in all cases, have the extreme effect of arresting the cause, and compelling the court to grant a new trial, where reasonable and prompt measures are taken by the court to prevent any injurious effect from such unprofessional and indefensible conduct.

*Id.* at 356, 56 N.E. at 776; *see also Bernard*, 540 N.E.2d at 25; *Lee*, 531 N.E.2d at 1168. Where a curative instruction effectively defused the impact of a prosecutor's improper remark, we have refused to reverse. *See, e.g., Parsons v. State*, 472 N.E.2d 915 (Ind. 1985). Conversely, courts have reversed convictions at least in part because the trial judge failed to admonish the jury. *See, e.g., Dooley v. State*, 271 Ind. 404, 393 N.E.2d 154, 156 (1979); *Williams*, 826 F.2d at 667. In

earlier cases, we presumed that a prosecutorial comment was harmless if accompanied by a curative instruction. *Keifer*, 204 Ind. at 464, 184 N.E. at 560. Although such a presumption is not consistent with *Chapman*'s requirement of certainty beyond a reasonable doubt, the presence of immediate affirmative action by a trial judge is a very important factor in our analysis.[15]

■ Therefore, where a prosecutor makes an improper comment on a defendant's silence, the State must demonstrate beyond a reasonable doubt that the remark—with its rhetorical impact weighed against the closeness of the case and discounted by the corrective effect of judicial action—did not alter the jury's verdict.

Turning to the facts of Moore's case, we think the persuasive caliber of the prosecutor's remark was minimal at best. Although it was a direct statement, it was isolated, inadvertent, and muddled. It occurred during a defense of the precision of the State's evidence and was thus not part of a coordinated attack on Moore's case. The prosecutor immediately explained that Moore had a right to refrain from testifying.

By contrast, the State's case against Moore was fairly strong. The prosecution introduced hair and fluid evidence consistent with Moore's guilt. Although the victim could not visually identify him, a fingerprint found on her vehicle registration, which the assailant had handled before the forcible sex acts, matched Moore's fingerprint.

Finally, we note that with Moore's consent the trial judge took immediate and responsible action to mitigate any potential prejudice. She not only gave the jury a curative instruction but also polled the jurors about their ability to disregard the remark.

---

**15.** Under our prior decisions, a trial judge may not constitutionally give a curative instruction over a defendant's objection. *See Williams v. State*, 426 N.E.2d 662, 667 (Ind.1981) ("[T]he jury should be given an admonition [regarding an improper prosecutorial comment] when the defendant requests one, *and not otherwise*, and ... the test to be applied in determining whether or not to grant a mistrial is whether or not such an admonition would be fully effective if given."); *Dooley*, 271 Ind. at 407, 393 N.E.2d at 156. Where a defendant refuses to permit such an instruction, the State should not be prejudiced by the absence of the instruction when it argues on appeal that a comment was harmless error. Where the rhetorical impact of a remark was of sufficient magnitude to alter the verdict because of the closeness of the case but the defendant did not request an instruction, the State should be permitted to demonstrate that had such an instruction been requested and given, the prejudice of the comment would have been neutralized such that a reviewing court could declare the error harmless beyond a reasonable doubt.

In sum, we think the highly incriminating fingerprint influenced the jury far more than the prosecutor's reference to Moore's silence. In light of these circumstances, we conclude beyond a reasonable doubt that, even were the statement improper, it was harmless.

### III. Prosecutorial Misconduct

Moore alleges a number of incidents of prosecutorial misconduct. In evaluating these claims we must decide, first, whether the prosecutor engaged in misconduct and, if so, whether it subjected the defendant to "a grave peril" of conviction because of improper influence.[16]

Moore's primary complaint is that three days before opening arguments the prosecutor served Moore's counsel with a witness list containing eighteen previously undisclosed names. Ultimately, however, the State called only a few of the new witnesses, and they were either already known to the defense or were called merely to prove chain of custody. Further, while the trial judge refused to exclude these witnesses, she gave the defense generous recesses during which to interview them. She concluded that the State's conduct, though "sloppy and negligent," was not "flagrant and deliberate." (R. 959.) We agree that in the absence of blatant or deliberate conduct, a continuance, not suppression, is the appropriate remedy. *Myers v. State,* 617 N.E.2d 553 (Ind.Ct.App. 1993). In light of all the relevant factors, we do not believe the judge's rulings were an abuse of discretion. *See McDonald v. State,* 511 N.E.2d 1066 (Ind.1987).

Moore raises a few other claims of prosecutorial misconduct, but we deem none of them preserved for appeal due to a lack of contemporaneous objections.[17] *See Lopez v. State,* 527 N.E.2d 1119 (Ind.1988).

### IV. Suppression of Evidence

Moore next challenges the warrant under which police obtained fingerprint, hair, blood, and other biological samples from him. He contends that the police affidavit supporting the warrant request contained false and misleading statements and that the judge pro tempore who issued the warrant had failed to take an oath of office the day he issued it. Moore raised these issues in a pretrial suppression motion, and he lost. When the prosecutor sought to introduce the evidence at trial, Moore's counsel unsuccessfully objected, but the objection was based solely on chain-of-custody grounds.

To preserve a suppression claim a defendant must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue. *Smith v. State,* 565 N.E.2d 1059 (Ind.1991). Where a defendant fails to object to the introduction of evidence, *see Lindsey v. State,* 485 N.E.2d 102 (Ind.1985), makes only a general objection, *see Riley v. State,* 427 N.E.2d 1074 (Ind.1981), or objects only on *other* grounds, *see Schweitzer v. State,* 531 N.E.2d 1386 (Ind.1989), the defendant waives the suppression claim. We hold that Moore has not preserved these suppression claims.[18]

### V. Sufficiency of the Evidence

Finally, Moore contends that the evidence was not sufficient to support his conviction. In reviewing this claim, we will neither weigh evidence nor judge witness credibility. We will examine the evidence that supports the verdict, together with any reasonable inferences one could draw from it, to determine whether there was sufficient probative evidence to support the convictions. *James v. State,* 265 Ind. 384, 354 N.E.2d 236 (1976).

---

**16.** The grave peril inquiry focuses not on the egregiousness of the act but on "the probable persuasive effect of the misconduct on the jury's decision." *Robinson v. State,* 499 N.E.2d 253, 256 (Ind.1986); *accord Butler v. State,* 647 N.E.2d 631, 635 (Ind.1995); *Maldonado v. State,* 265 Ind. 492, 498–99, 355 N.E.2d 843, 848 (1976).

**17.** Moore preserved his claim that the prosecutor's reference to his decision not to testify was

misconduct, but this allegation is largely based on his contention that the statement was intentional. As noted above, we disagree.

**18.** We have recently made clear that objections based on a judge pro tempore's lack of authority do not involve the jurisdiction of the court and are waivable. *Floyd v. State,* 650 N.E.2d 28 (Ind.1994).

Here, the defense acknowledged throughout the trial that the key issue was the identity of A.B.'s assailant. (R. 1669.) Although A.B. could not visually identify him, the State introduced circumstantial evidence to establish that the assailant was Moore.

A.B. gave a physical description of her attacker, and it generally suited Moore. Fluid evidence recovered from A.B. was broadly consistent with Moore. Hairs that were also recovered from A.B. were similar to Moore's hair. Most importantly, an FBI specialist lifted a latent fingerprint from A.B.'s vehicle registration, which the assailant had handled, and the print matched Moore's fingerprints. Moore's principal argument against an inference of guilt from this evidence was a wholly unsubstantiated claim that, while he was in police custody, someone somehow tricked him into touching the vehicle registration.

This evidence was sufficient. In *Mediate v. State*, 498 N.E.2d 391 (Ind.1986), we considered what quantum of additional evidence, if any, was necessary to sustain a conviction based principally on a fingerprint. We observed that "[a] reasonable doubt is not a fanciful doubt—it must be more than speculation or whim." *Id.* at 393 (internal quotation marks omitted). We then concluded that when investigators find fingerprints on an object "preclusion of legitimate access to the object supports the inference that the fingerprints were not made in a lawful manner." *Id.* at 394.

In this case, Moore's fingerprint turned up on A.B.'s vehicle registration, a document to which few persons would ever have legitimate access, but which the assailant had handled with his bare hands. Furthermore, we believe Moore's suggestion that someone caused him to touch the registration in a shuffle of papers is gross speculation that, absent any support, lies in the realm of the fanciful.

We hold that the evidence was clearly sufficient for a reasonable juror to conclude that the man who forced A.B. to perform oral sex and who raped her three times was Thomas Moore.

## VI. Conclusion

A jury concluded that the man who assaulted A.B. was Thomas Moore. Moore's claims of error are to no avail. The convictions are affirmed.

DeBRULER, DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Justice, concurring.

I concur that in this case the prosecutor's reference to defendant's failure to testify was harmless error. I also concur that the prosecutor's reference was inadvertent and that the trial court well handled the situation in its polling and admonishment of the jury.

I write to expand slightly on the majority's treatment of *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). In *Robinson*, the prosecutor's reference to the defendant's failure to testify was held permissible because it constituted "a fair response to the claim made by defendant or his counsel," 485 U.S. at 32, 108 S.Ct. at 869, *to wit*, defense counsel's closing argument that the government had not allowed the defendant to explain defendant's side of the story. *Id.* at 26, 108 S.Ct. at 865–66.

Neither *Robinson* in particular, nor federal constitutional law applicable to the states in general, gives a prosecutor *carte blanche* to refer to a defendant's failure to testify so long as the prosecutor does not invite the jury to infer guilt from it. The general rule remains that prosecutors must not refer to defendants' failure to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). While the law allows for harmless errors (as in this case) and fair responses to defense claims (as in *Robinson*), I hope my *Splunge* dissent, referred to by the majority, makes clear that such references can easily give rise to federal constitutional error requiring reversal. *See Splunge v. State*, 641 N.E.2d 628, 634 (Ind.1994) (Sullivan, J., dissenting). And, as I think the majority suggests in its footnote 14, this is-

sue may be ripe for re-examination as a matter of Indiana constitutional law.