## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 21 2020, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles D. Martin,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

October 21, 2020

Court of Appeals Case No.
20A-CR-351

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1905-F5-70

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Charles Martin was found guilty of one count of fraud on a financial institution and one count of attempted fraud on a financial institution, both Level 5 felonies; and one count of theft, one count of attempted theft, and two counts of identity deception, all Level 6 felonies. The trial court sentenced him to an aggregate sentence of fourteen years. Martin appeals his convictions, raising two issues for our review: 1) whether the trial court erred in allowing the State to amend the charging information for attempted theft after his trial began, and 2) whether the prosecutor engaged in misconduct by commenting on Martin's failure to testify during closing arguments. Concluding the trial court properly allowed the amendment as it was an amendment to the form, not the substance, of the charging information, and the prosecutor's statement did not constitute fundamental error, we affirm.

# Facts and Procedural History

[2] On April 29, 2019, Martin went to Fifth Third Bank ("Fifth Third") in Lafayette, presented a Florida identification card in the name of S.D., and withdrew $7,620 from S.D.'s account. The address on the identification card matched the bank's information for an account belonging to S.D., although it showed a different expiration date. The withdrawal slip Martin filled out appeared to the teller to have been "rushed[,]" and she had concerns about the signature match. Transcript, Volume II at 20, 22-23. Because of her reservations, the teller sought the branch manager's input, and he approved the

transaction. After Martin left the bank, the teller remained uneasy and did further research into the account. She eventually contacted S.D., who advised he was in Florida. The teller then contacted police.

[3] That same day, Martin went to Tippecanoe County Regions Bank ("Regions"), presented a Florida driver's license with his picture but in P.R.'s name, and requested to withdraw $7,620 from P.R.'s account. When Martin was unable to provide the email address associated with the account, the bank manager called the phone number on file. The person who answered the phone was able to answer questions about the account and the manager therefore denied the transaction while a teller surreptitiously called the police. Martin tried to leave the bank but was intercepted by police responding to the call. Martin agreed to speak with the police and was eventually placed under arrest. This interaction was captured on video by the officer's body camera. Police took the driver's license in P.R.'s name back to Fifth Third and the teller who had waited on Martin recognized the picture on the license as that of the man who had identified himself to her as S.D. earlier in the day. Martin told police that he had been provided the identification by someone else and was to receive $1,000 of the withdrawn funds for completing the transactions.

[4] The State charged Martin with Count I, fraud on a financial institution for the transaction at Fifth Third; Count II, attempted fraud on a financial institution for the transaction at Regions Bank; Count III, theft for withdrawing money from S.D.'s account; Count IV, attempted theft for attempting to withdraw money from P.R.'s account; Count V, identity deception, for using S.D.'s

identifying information; and Count VI, identity deception, for using P.R.'s

identifying information.  The information for Count IV read:

Information of Attempted Theft
(Level 6 Felony)

* * *

On or about April 29, 2019, in Tippecanoe County, State of
Indiana, Charles Deon Martin did knowingly or intentionally
exert unauthorized control over the property of [P.R.], to-wit:
U.S. currency, with the intent to deprive [P.R.] of any part of the
use or value of the property, said property having a value of at
least seven hundred fifty dollars and less than the value of fifty
thousand dollars;

All of which is contrary to the form of the statute in such cases
made and provided, to-wit:  I.C. 35-43-4-2(a) and I.C. 35-41-5-1
and I.C. 35-43-4-2(a)(1)(A) and I.C. 35-41-5-1 and against the
peace and dignity of the State of Indiana.

Appendix of Appellant, Volume II at 138.[1]

[5]     At Martin's jury trial, the trial court advised the jury during the preliminary

instructions that Martin was charged with, among other things, "Count IV:

Attempted Theft[.]"  Tr., Vol. II at 4.  The charging information as set out

above was also read to the jury.  During its case-in-chief, the State introduced

---

[1] Indiana Code section 35-43-4-2 defines the various levels of the crime of theft and section 35-41-5-1 defines
what constitutes an attempt to commit a crime.

into evidence video of Martin's interaction with police. At the conclusion of the State's presentation of evidence, the State moved to amend the charging information for Count IV and the following discussion occurred:

> [State]: The title of the charge says attempt but the body of the language it actually is providing what the basis for the . . . charge is, does not use the word attempt. . . . [W]e think everybody understood that from all the evidence that was made available to the defense and the way the trial has proceeded it was simply an error to not include the word attempt in the body of the language. So, we are asking the Court to just find it to be a Scrivener's error, which would allow us to still amend the charge at this time.
>
> * * *
>
> [Defense counsel]: I understand counsel's argument. The other thing that is missing in addition to language attempt is the substantial step[.] . . . Since it's an attempt, . . . not only do you have to address it as an attempt but then a substantial step . . . .
>
> [State]: Well, it's a little late to be,
>
> [Court]: I believe it is. I believe it is. . . . [I]f there's a question about the charging information I would have thought a motion prior to discussion of . . . those instructions in the preliminary, were as to the Counts, and now raise it at this time, when the evidence in this case would . . . tend to suggest that attempted theft and that a substantial . . . step is what the evidence is. So, [defense counsel], are you moving, or tell me what you're doing.
>
> [Defense counsel]: I was just making the observation Judge.

\* \* \*

> [Court]: [State, a]re you moving then to amend by intermediation or whatever the word is to have that language of the substantial step?
>
> [State]: [Y]es.
>
> [Court]: I'm going to grant that. I don't disagree with [defense counsel] however I think the evidence goes in that direction. So that's how we are going to do that.

*Id.* at 118-20.[2] The State then rested.

[6] Martin chose not to testify, and the defense rested without presenting any evidence. During the State's closing argument, the prosecutor said, "[Martin] was cooperative with the police, but he was cooperative in a way that kind of maximized his ability to minimize his involvement yet still kind of play the role of accepting responsibility and coming clean to you. *He testified, or he didn't testify but the evidence showed* you in the video of his interview with the police that he had actually purchased [the] button down shirt [he was wearing on April 29] at Wal-Mart that morning to wear to commit the fraud because he had to play

---

[2] Defense counsel pointed out during this conversation that the information for Count II, attempted fraud on a financial institution, also lacked the "substantial step" language, though it did include the "attempt" language. *Id.* at 118; App. of Appellant, Vol. II at 136. It is not clear if the State's motion was intended to amend Count II as well as Count IV, but Martin does not challenge any amendment of Count II on appeal.

the role of a Doctor." Tr., Vol. II at 127-28 (emphasis added). Martin did not object to the State's closing argument.

[7] During final instructions, the jury was properly instructed on the elements required to find Martin guilty of attempted theft on Count IV, including the requirement that Martin must have taken a substantial step toward the commission of the offense. The jury was also instructed that "[a] Defendant has no obligation to testify. The Defendant did not testify. You must not consider this in any way." *Id.* at 160-61. The jury found Martin guilty of all charges. The trial court sentenced Martin to an aggregate sentence of fourteen years, with ten years to be executed, two years served on supervised probation, and two years served on unsupervised probation. Martin now appeals his convictions.

# Discussion and Decision

## I. Amendment of the Charging Information

[8] Martin first contends the trial court erred in allowing the State to amend Count IV of the charging information after trial began because the amendment was one of substance, not form.

[9] The charging information advises the accused of the particular offense he is charged with so he can prepare a defense and be protected from being placed in jeopardy twice for the same offense. *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). Whether an information may be amended after the

commencement of trial depends upon whether the amendment is one of form or substance. An amendment of substance is not allowed after trial has commenced. *See* Ind. Code § 35-34-1-5(b). However, the court may "permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant" before, during, or after the trial. Ind. Code § 35-34-1-5(c). An amendment is one of form if a defense under the original information is equally available after the amendment *and* the defendant's evidence applies equally to the information in either form. *Fajardo v. State*, 859 N.E.2d 1201, 1207 (Ind. 2007). An amendment is one of substance if it is essential to making a valid charge of the crime. *Id.* Whether an amendment is one of form or substance is a question of law which we review de novo. *Gibbs v. State*, 952 N.E.2d 214, 221 (Ind. Ct. App. 2011), *trans. denied*.

[10] "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge[.]" *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014) (internal quotation omitted). If an amendment does not affect any particular defense or change the positions of either of the parties, then the defendant's substantial rights are not violated. *Id.* The ultimate question is whether the defendant "had a reasonable opportunity to prepare for and defend against the charges." *Stafford v. State*, 890 N.E.2d 744, 752 (Ind. Ct. App. 2008) (quotation omitted).

[11] Martin contends he objected to the amendment, *see* Brief of Appellant at 8, but in fact, his counsel specifically disavowed making an objection, stating that he

was "just making that observation[.]" Tr., Vol. II at 119. Failure to object to the amendment of a charging information results in waiver on appeal unless the defendant can show fundamental error. *See Absher*, 866 N.E.2d at 355 ("[F]ailure to object at trial constitutes waiver of review unless an error is so fundamental that it denied the accused a fair trial."). But Martin has not alleged fundamental error as to this issue. Thus, this claim is waived.

[12] Waiver notwithstanding, we conclude the amendment was one of form. In *Brown v. State*, 912 N.E.2d 881 (Ind. Ct. App. 2009), *trans. denied*, the defendant challenged a trial court's ruling allowing the State to amend the charging information after trial began to add language regarding intent to a charge of possession of child pornography. *Id.* at 891-92 (alleging defendant "knowingly or intentionally possess[ed] a picture, [etc.] that depicts or describes sexual conduct by a child who is less than sixteen (16) years of age . . . *intended to satisfy or arouse the sexual desires of any person*") (amendment emphasized). We held that the amendment adding the intent language did not materially change the substance of the offense or affect the defendant's defense. *Id.* at 892.

> The charge before and after the amendment was possession of child pornography, and the essential elements of the crime remain unchanged. By adding the intent language, the State made the charging information conform to the statutory language defining sexual conduct in the context of the possession of child pornography statute and essentially increased its burden by adding an additional element to be proved by the State.

*Id.*

[13]     The same is true here.  The original charging information for Count IV referred to the crime as attempted theft and included citations to the attempt statute as well as the theft statute; contrast this with the charging information for Count III that alleged Martin had committed theft and included citations only to the theft statute.  *See* App. of Appellant, Vol. II at 137-38.  In other words, Martin was put on notice of the elements of the crime charged when the original information was filed, and the amendment only made the language of the charging information conform to the relevant statutes.  Because this amendment did not materially change the substance of the offense with which Martin was charged, it was an amendment of form only and was allowed after the commencement of trial.

[14]     Martin contends the amendment prejudiced his substantial rights because it deprived him of the defense "that he never exerted unauthorized control over currency belonging to [P.R.] because he left the Regions Bank prior to completing the transaction."  Br. of Appellant at 9.  Martin cites *Gibbs*, 952 N.E.2d 214, in support of his argument.  In *Gibbs*, the defendant was charged with arson for knowingly damaging property belonging to two specific people residing in a multifamily residence.  After his trial began, the State moved to amend the information to omit the specific names.  The trial court allowed the amendment over the defendant's objection.  The defendant argued on appeal that the amendment should not have been allowed after trial began because it was an amendment of substance.  We agreed, noting that his planned defense— that he did not cause damage to the specific apartments alleged but only to his

own—was no longer available after the amendment and therefore the trial court erred in allowing the amendment after trial began. *Id.* at 221-22. In Martin's case, however, the original information charged Martin with attempted theft of P.R.'s money, it just omitted certain statutory language. Thus, his defense would not have met the charge under either iteration of the charging information. In other words, Martin was required to defend against the substantial step element of the charge with or without the omitted language. The amendment was a change of form that did not substantially prejudice Martin's rights and the trial court properly allowed the amendment even after the trial commenced.

# II. Prosecutorial Misconduct

Martin also contends the prosecutor committed misconduct by commenting on his decision not to testify. Because Martin did not object at the time, he now argues the misconduct constituted fundamental error.

## A. Standard of Review

As our supreme court has explained,

> [i]n reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of

Professional Conduct. The gravity of peril is measured *by the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct.

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quotations and citations omitted).

[17] To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Sciaraffa v. State*, 28 N.E.3d 351, 358 (Ind. Ct. App. 2015), *trans. denied*. Failure to comply with these requirements forfeits a prosecutorial misconduct claim. *Delarosa v. State*, 938 N.E.2d 690, 696 (Ind. 2010). Martin concedes he did not properly preserve his claim of prosecutorial misconduct for appeal. *See* Br. of Appellant at 10. Thus, to prevail on appeal, Martin must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002).

[18] Fundamental error is an extremely narrow exception to waiver, and a defendant faces the heavy burden of demonstrating that the alleged error was so prejudicial to his rights that it rendered a fair trial impossible. *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015).

> In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and

substantial potential for harm." The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled."

*Ryan*, 9 N.E.3d at 668 (citations omitted). To determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible, we look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions. *Jerden*, 37 N.E.3d at 498. Review for fundamental error is not intended to grant the defendant a second bite at the apple; it is meant to permit appellate courts "to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred[.]" *Ryan*, 9 N.E.3d at 668.

## B. Comment on Failure to Testify

[19]     "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996). A defendant bears the burden of proving that a prosecutor's statement penalized the exercise of his or her right to remain silent. *Id*. at 736. A prosecutor's subjective motivation in making a comment about a defendant's silence is

irrelevant: "It is the effect of a remark, not the intent of its speaker, that frustrates a defendant's exercise of the right to remain silent at trial." *Id.* at 738.

[20] In this case, the prosecutor's reference to Martin's non-existent "testimony" was inadvertent and his immediate correction was at most an indirect comment on the conduct of the trial. Even though it was inappropriate for the prosecutor to say, "he didn't testify," we cannot say this rose to the level of fundamental error. Tr., Vol. II at 127. In context, the prosecutor misspoke, immediately corrected his error, and clarified that he was referring to a particular piece of evidence in which Martin's words were admitted through a videotape. The correction did not ask the jury to draw an inference of guilt from Martin's silence at trial or suggest that the jurors should do so. Additionally, the trial court instructed the jury not to consider Martin's failure to testify in any way. Under these circumstances, we cannot say the prosecutor's statement subjected Martin to grave peril, nor did it make a fair trial impossible or constitute a blatant violation of elementary due process principles. *Cf. Nichols v. State*, 974 N.E.2d 531, 534, 536-37 (Ind. Ct. App. 2012) (holding prosecutor's statement that "I usually don't comment on a person's [F]ifth [A]mendment right but I'm gonna make an exception in this case . . ." constituted fundamental error because it was an "obvious invitation to the jury to draw an adverse inference from [the defendant's] failure to testify" and "obviously suggested to the jury that [the defendant] did not testify so as not to incriminate himself").

# Conclusion

The trial court properly allowed the State to amend the charging information for Count IV after trial began to conform to the statutory language as the amendment did not prejudice Martin's substantial rights. Further, the prosecutor's brief statement that Martin "did not testify" did not improperly comment on the invocation of his Fifth Amendment right not to testify and did not constitute fundamental error. Accordingly, Martin's convictions are affirmed.

Affirmed.

Crone, J., and Brown, J., concur.